ROBERTSON v. BOYLAN.

1. ADVERSE POSSESSION—EVIDENCE—SUFFICIENCY.
    Plaintiffs' claim of title by adverse possession to a strip of
    land must fail where the testimony fails to show any
    claim of adverse possession or ownership by their
    predecessors in title, and they have occupied the premises
    less than 15 years.

2. SAME—GRANTORS' RIGHTS NOT CONVEYED—TACKING POSSESSION.
    Where plaintiffs' grantors did not convey to them any rights
    they might have acquired in said strip of land by adverse
    possession, plaintiffs could not tack their adverse posses-
    sion to that of their grantors for the purpose of complet-
    ing the statutory 15-year period.

3. SAME—OCCUPANCY BY CONSENT—NOTICE OF ADVERSE CLAIM
    NECESSARY.
    Where occupancy of a strip of land by plaintiffs' pred-
    ecessors in title began by consent of the owner, the
    statute of limitations giving title by adverse possession
    would not begin to run until the owner was notified that
    title was claimed adversely.

Appeal from superior court of Grand Rapids; Dun-
ham (Major L.) J.    Submitted January 19, 1921.
(Docket No. 46.)    Decided March 30, 1921.

Bill by Winifred C. Robertson and others against
Fred M. Boylan and another to try the title to certain
land.    From a decree dismissing the bill, plaintiffs
appeal.    Affirmed.

*Smedley & Linsey,* for plaintiffs.

*Carroll, Kirwin & Hollway,* for defendants.

BIRD, J.  This bill was filed to determine the title to
a strip of land about 10 feet wide and about 120 feet

On right of one in permissive possession of real property to
acquire title by adverse possession, see note in 12 L. R. A.
(N. S.) 1140.

long, which lies between lands owned by the parties hereto in the city of Grand Rapids. After hearing the matter the chancellor decided that defendants had the title thereto and dismissed plaintiffs' bill. It appears that in the year 1893 Sluman S. Bailey was the owner of two lots, numbers 16 and 17 (Coit and Curtis Partition plat), situate on the northwest corner of Fulton street and North Union avenue in the city of Grand Rapids. The lots at that time were 152 feet long and each was about 60 feet wide. The long way of the lots was north and south along North Union avenue. In 1893, Mr. Bailey gave his niece, Helen R. Gardner, the privilege of erecting a house on the north end of these lots, facing North Union avenue. The next year he conveyed to her the north 28 feet from off and across these lots. Miss Gardner erected the dwelling and moved into it and occupied it until 1912 when these plaintiffs purchased it. Miss Gardner, however, sold the premises in 1904 to her brother-in-law, Elmer E. Stephenson, and when he died in 1909 he left the premises to his wife, Ida Stephenson, who, in turn, conveyed them to plaintiffs. During the occupancy of the premises by Miss Gardner she used a strip 8 or 10 feet wide of her uncle's land immediately adjoining her premises on the south for the purpose of cultivating flowers. Her house was constructed to within one foot of her south line. The balance of her uncle's lots was unimproved and was open as commons. Miss Gardner continued to cultivate flowers and vines on the strip and drove 2x4 posts and strung cords and wires on them to sustain the flowering vines. Later she erected chicken fence along the strip to support the vines. It is the claim of plaintiffs that Miss Gardner erected a fence enclosing the disputed strip and occupied it as her own. When plaintiffs acquired the land they enclosed the strip with a substantial fence. It is the claim of plaintiffs that Miss Gardner's

occupancy of the strip, together with their occupancy, gives them title thereto by adverse possession. The defendants, who are now the owners of the balance of lots 16 and 17, deny that plaintiffs have acquired any rights therein.

The chancellor appears to have been impressed that while plaintiffs might have occupied and claimed title to the disputed strip; their predecessors in title, Helen Gardner and the Stephensons, never made any such claims. We think the proofs fully support this view. The testimony makes it reasonably clear to us that Miss Gardner's lot was narrow. Her house set within one foot of her south line. She asked for and got her uncle's permission to use the disputed strip south of the house upon which to cultivate flowers and vines. There was considerable testimony introduced by both parties as to the use she made of this strip and the character of the erections thereon. Some of the witnesses thought the strip used by her ran the entire length of the lot. Others thought it extended only the length of the house. A few thought the fence or erections were of a permanent nature, but most of them testified that they were temporary affairs. We think it appears to be established by the proofs that whatever the erections were they were placed there by Miss Gardner for the purpose of assisting in the cultivation of her flowers. Stakes were driven and wires and cords were strung from stake to stake to support the flowers and vines. Later chicken wire or poultry fencing was used, and nearly all of the witnesses connect its use with the cultivation of flowers and not for the purpose of asserting any ownership to the strip so used. Several witnesses, among them some of the relatives of Miss Gardner, and also members of her household, testified that Miss Gardner told them she got permission from her uncle to use the strip in the cultivation of flowers. The testimony

fails to show any claim of adverse possession or ownership either upon the part of Miss Gardner or the Stephensons, to whom she conveyed the title. Of course, if there was no such claim by them plaintiffs' contention must fail as they had not occupied the premises for a period of 15 years.

But if we were to assume that Miss Gardner and her grantees occupied the strip claiming to own it, plaintiffs would still be prevented from claiming title in these proceedings. They purchased only 28 feet. They saw it before purchase. They did not purchase the title to the disputed strip. The defendants have the paper title. Unless plaintiffs' grantors convey their right to the disputed strip plaintiffs could not tack their adverse possession to theirs, which they would have to do in order to establish their title by adverse possession. This question was before the court in *Sheldon* v. *Railroad Co.*, 161 Mich. 503, and it was there said:

"It seems to us to be very clear that the complainant cannot rely upon his deed to show privity of estate, because the disputed premises are not mentioned in the deed. Where the grantee relies upon the deed to show privity of estate, he cannot have the benefit of the grantor's possession of lands which are not mentioned in the deed. 1 Am. & Eng. Enc. Law (2d Ed.), p. 845, and cases cited in note 4. The general rule is that possession cannot be tacked to make out title by prescription where the deed under which the last occupant claims title•does not include the land in dispute. It must clearly appear in the deed that the particular terms were embraced in the deed, or transfer, in whatever form it may have been made. 1 Cyc. p. 1007, and note."

This rule was applied in that case and later applied in *Lake Shore, etc., R. Co.* v. *Sterling*, 189 Mich. 366, and again in *Wilhelm* v. *Herron*, 211 Mich. 339.

Another barrier in the way of plaintiffs' acquisition

of title by adverse possession suggests itself. The undisputed testimony is that Miss Gardner's occupancy began in favor, that she occupied the disputed strip by consent of her uncle, and if this were so the statute of limitations would not begin to run in her behalf at least before she had notified her uncle, or his grantee, that she was claiming title adversely to him. *Standard* v. *Jewell,* 206 Mich. 61, and cases cited.

After examining this record with considerable care we are of the opinion that the conclusions arrived at by the chancellor are well taken, and should dispose of the case.

The decree is affirmed.

STEERE, C. J., and FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred with BIRD, J.

MOORE, J., concurred in the result.

The late Justice BROOKE took no part in this decision.