LEWIS *v.* BEAVERTON POWER CO.

1. ADVERSE POSSESSION—GRANTEE MAY TACK HIS POSSESSION TO
   THAT OF GRANTOR'S WHERE LATTER'S RIGHTS CONVEYED.
   Where the grantor conveyed his rights in a strip of land
   held by him by adverse possession, his grantees could
   tack their holding to that of their grantor to complete the
   15-year period required by statute to establish title by
   adverse possession.[1]

2. JUDGMENT—TRESPASS—DEFENDANT NOT ENTITLED TO DIRECTED
   VERDICT WHERE ACTIONABLE TRESPASS PROVEN.
   Where, in an action for damages for flooding their lands,
   plaintiffs proved an actionable trespass, defendant was
   not entitled to a directed verdict or to a judgment *non
   obstante*, although the amount of the damages was not
   proved.[2]

3. APPEAL AND ERROR.
   Where both plaintiffs and defendant review a judgment in
   plaintiffs' favor, and defendant concedes that it does not
   ask for a reversal and new trial, but insists that it was
   entitled to a directed verdict and asks the appellate court
   to enter judgment in its favor, on the court's decision
   against defendant's claim, the judgment should be affirmed
   unless plaintiffs are entitled to a new trial on their assign-
   ments of error.[3]

4. SAME—DAMAGES—REJECTION OF EVIDENCE NOT PREJUDICIAL.
   The rejection of plaintiff's testimony as to the amount of
   his damages, although it might properly have been ad-
   mitted, was not prejudicial error, where an opportunity
   was given his counsel to prove said damages by showing
   the facts, and he declined to do so.[4]

5. SAME—PARTY MAY NOT COMPLAIN OF INSUFFICIENCY OF DAM-
   AGES AWARDED WHERE NO DAMAGES SHOWN.
   Where plaintiffs showed the extent of the flooding of their
   land, but introduced no evidence to show the damages

[1]Adverse Possession, 2 C. J. § 72; [2]Judgments, 33 C. J. § 114;
Trespass, 38 Cyc. pp. 1123, 1152, 1157; [3]Appeal and Error, 4 C. J.
§ 3126 (Anno); [4]Id., 4 C. J. § 2986; Trespass, 38 Cyc. p. 1158.

they had suffered, and the jury gave them a verdict for a substantial 'sum, they may not complain of rulings of the court restricting testimony as to the amount of land flooded.[5]

Error to Gladwin; Smith (Guy E.), J.  Submitted April 15, 1925.  (Docket No. 84.)  Decided July 16, 1925.

Case by Ernest Lewis and another against the Beaverton Power Company for damages to plaintiffs' land by flooding.  Judgment for plaintiffs.  Both parties bring error.  Affirmed.

*Kinnane & Leibrand,* for plaintiffs.

*Campbell & Foster* and *J. C. Shaffer* (*Beach & Beach,* of counsel), for defendant.

McDONALD, C. J.  This action was brought to recover damages for the unlawful flooding and overflowing of the plaintiffs' land by the construction of a dam by the defendant on the Tobacco river at Beaverton, Gladwin county, Michigan.  The plaintiffs are the owners of the land in question which lies on the north and south sides of the south branch of the Tobacco river.  It is their claim that, when allowed to flow in its natural course, the river does not overflow its banks, that in 1919 and 1920 the defendant built a dam across the river about two miles below the plaintiffs' land thereby obstructing the flow of the water, causing it to rise to an unusual height and to overflow the adjoining land, destroying the crops and timber and depriving the plaintiffs of the use of about 35 acres.  The plaintiffs' deed to the land lying south of the river contained a reservation, "excepting and reserving the right of flowage of the Tobacco river through said land."  This land originally belonged

[5]Appeal and Error, 4 C. J. § 2892.

to Ross Brothers, and in all of the successive deeds until the title vested in the plaintiffs there was a similar reservation.   It is conceded that the defendant, the Beaverton Power Company, is now the owner of any rights of flowage previously owned by Ross Brothers.   On the trial the court refused to submit the question of damages to land lying on the south side of the river, holding that, as to these lands, the reservations in the deeds gave the defendant an unlimited right of flowage.

The reservation as to the land lying on the north side of the river was different.   It was as follows:

"First parties reserving and having the right and privilege to raise the water in said south branch of the Tobacco river not to exceed 20 feet at the dam of said parties of the first part, the same to be constructed in the city of Beaverton; and said first parties also reserve the right to use said river for floating all of their timber on said river."

About seven acres of the land on the north side of the river were not included in the deed from Ross Brothers to plaintiffs' predecessor in title, but were included in plaintiffs' deed.   To this they claim title by adverse possession.   The court submitted the question of adverse possession and, based on the reservation in the deed, instructed the jury that, if the defendant maintained more than 20-foot head of water at its dam, thereby causing damage to the plaintiffs' lands, they could recover.   The jury found for the plaintiffs and estimated their damages at $841.70. When the plaintiffs rested their case the defendant moved for a directed verdict, which was denied.   A motion for a judgment *non obstante veredicto* was also denied and judgment was entered on the verdict. Both parties bring error.

As to the defendant's assignments of error, the only question to be discussed is whether the court should have directed a verdict against the plaintiffs or, having

declined to do that, whether he should have entered a judgment for the defendant, notwithstanding the verdict.

The defendant relies on plaintiffs' failure to show:

(1) Title by adverse possession.

(2) That there was any flooding of the lands beyond what would actually occur by the carrying of a 20-foot head of water at defendant's dam.

(3) If there was an excess flooding, to what extent it flooded the plaintiffs' land.

(4) What damages they suffered by reason of defendant's carrying more than a 20-foot head of water at the dam.

Adverse Possession. The plaintiffs claimed to own all of the 80 acres on the north side of the river. On April 26, 1917, they purchased it from Orin L. Spicer. On April 6, 1905, Spicer and his father received from Ross Brothers a deed in which this land was described by metes and bounds, but which did not include 7 acres of the 80 lying between the highway and the river. Spicer, however, went into possession of the whole 80 and continued in possession until he sold to the plaintiffs in 1917. In his deed to the plaintiffs the description included the 7 acres. This 7 acres is low land between the river and the highway and is that portion of the land north of the river which plaintiffs claim was most damaged by flooding from defendant's dam.

In their brief counsel for the defendant say:

"Could Lewis tack the adverse possession of Spicer to the strip of land which was not conveyed to Spicer by Ross Bros., so that his predecessor and grantor, with Lewis, would have held this land adversely for a period of 15 years and more?"

The plaintiffs can tack Spicer's adverse possession to theirs because the 7 acres are included in his deed to them. All rights that he had in the land were conveyed to them by this deed. See *Robertson* v.

*Boylan*, 214 Mich. 27, and cases cited.    The court did not err in submitting to the jury the question of plaintiffs' claim to title by adverse possession.

As to the flooding of the land and the damages occasioned thereby, if the defendant carried more than a 20-foot head of water at its dam and this excess damaged the plaintiffs, we are not concerned with the extent of the flooding or with the actual amount of the damages, for, if there was testimony of any excess flooding and resulting damages, defendant would not be entitled to a directed verdict or to a judgment *non obstante*.    A reversal is not asked on other grounds. In their brief counsel for defendant say:

"The defendant requests this court either to enter a judgment in favor of the defendant or cause an order to be made compelling the circuit judge to enter a judgment for the defendant *non obstante veredicto.* The defendant does not ask that the judgment be reversed and a new trial ordered."

The defendant offered no testimony and we think it clearly appears from the plaintiffs' proofs that there was more than a 20-foot head of water carried at the dam, and that such excess caused them some damage. The extent to which the excess of water flooded the lands and the amount of damages caused by such excess flooding was not proven.    But, having proved an actionable trespass, whether they suffered much or little, they were entitled to a verdict for some damages. 1 Sutherland on Damages (4th Ed.), § 10.    Therefore, the court did not err in refusing to direct a verdict or to enter a judgment *non obstante veredicto.*    In view of counsel's concession that they do not desire a reversal, the judgment should be affirmed unless the plaintiffs are entitled to a new trial on their assignments of error.

It is first claimed by them that the court erred in excluding evidence of damages.    They complain of the following ruling:

"*Q.* How much were you damaged by the flooding of this land, Mr. Lewis?

"*Mr. Beach:* I object to that, if the court please, how much he was damaged, let him show what the facts were; that is a conclusion.

"*The Court:* I think the objection is well taken.

"*Mr. Leibrand:* I think the rule is, your honor, that when ownership of property, in reference to the owner testifying to its value, or the value of his damage, the owner of property does not have to qualify as an expert as others do, and that is so held in a very recent case in the Supreme Court.

"*Mr. Beach:* If the court please, we do not object to this line of questions because he is not qualified, but we object, if the court please, to the man testifying to what his damages are; he cannot state what this property was damaged, and what was done with it— let the jury determine how much he was damaged; if he says that he has sold trees up there and they were worth so much, but when he comes on here in a wholesale way, how much was your damage, that of course does not—

"*The Court:* Do you think that it is?

"*Mr. Leibrand:* I will change this question, I will ask the witness how much this timber was worth before it was destroyed, not for sawing purposes but what it was actually worth for the purpose it was used and bought?

"*Mr. Beach:* Now I object to that, if the court please, for which it was used and bought; we cannot determine when a man buys a piece of property, except he may—

"*The Court:* I will sustain the objection."

The court might properly have permitted the witness to answer the question as to the amount of his damages, but his ruling did not preclude counsel from inquiring for facts which would show the amount of damages. That would have been the proper course. It was offered to counsel. He declined to follow it. His failure to show actual damages was not due to the action of the court. There was, therefore, no error in the ruling.

The plaintiffs showed the extent of the flooding of

their lands but introduced no evidence to show in dollars and cents the damages they suffered. Notwithstanding a total lack of evidence on this question, the jury gave them a verdict for $841.70. We have said that, having shown actionable trespass, the plaintiffs were entitled to a verdict for some damages. But when the jury got beyond nominal damages they were in a realm of speculation. The question as to whether the verdict is excessive is not before us. The defendant is not complaining of that. And having submitted no proofs from which the jury could make an intelligent determination of their damages, the plaintiffs cannot now complain that they were entitled to a greater amount than the jury allowed them. They were not entitled to a verdict based on mere guess and speculation. In this view of the case it is not necessary to discuss at length any of the other questions urged by the plaintiffs, because they all go to the extent of the injury from the flooding. For instance, the court ruled that the plaintiffs could not recover damages for flooding the land on the south side of the river. Assuming, but not holding, that the court was wrong, how were the plaintiffs injured by that ruling? They had put in all of their evidence before the court made his ruling and had utterly failed to show the damages to land on that side of the river. Having no evidence on the question, they cannot complain that the court refused to allow them to include more land, so that the jury might guess more damages against the defendant. The same reasoning applies to the other questions raised by the plaintiffs. It is not necessary to discuss them. In view of the record they should be content with the verdict of $841.70.

The judgment of the circuit court is affirmed, without costs to either party.

CLARK, BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.