**Victor E. LURVEY and Mary Katherine Lurvey, Plaintiffs-Respondents,**

v.

**Eugene R. BURRELL and Jessie S. Burrell, and Great Southern Savings & Loan Association, a Corporation, Defendants-Appellants.**

No. 46682.

Supreme Court of Missouri,
Division No. 1.

Nov. 10, 1958.

Schwab & Carr, Don Burrell, Springfield, for appellants.

Fred A. Moon, Springfield, for respondents.

WESTHUES, Judge.

This is an action to determine title to a strip of land in the City of Springfield, Greene County, Missouri. The trial court entered a decree in plaintiffs' favor and the defendants appealed.

The parcel of land in question is about 10 feet in width and is located in the N.E. $\frac{1}{4}$ of Section 31, Township 29 N., Range 21 W., described in surveys (plaintiffs' Exhibits Nos. 1 and 3) as beginning at a point on the south line of Sunshine Street, which point is 38 feet south of the section line and 641 feet west of the N.E. corner of the N.E. $\frac{1}{4}$ of Section 31, thence south 222 feet, thence west $9\frac{1}{2}$ feet, thence north 222 feet, thence east $10\frac{1}{2}$ feet to the point of beginning.

Plaintiffs own the land to the east of this strip and claim that they are the owners of the strip by adverse possession. Defendants own land to the west and claim to own the strip by deed. It is conceded that defendants have the paper title and that if plaintiffs are to prevail, it must be on the theory of adverse possession, that is, that their predecessors in title acquired title by adverse possession and that they obtained the title by a deed wherein the description of the land did not include the parcel in dispute.

It was stipulated that the deeds conveying the land lying both east and west of this strip fixed the boundary line the same as the east line of the strip as shown by the surveys. It was in evidence that a fence had been built about 10 feet west of the boundary line described in the deeds which is the west line of the 10-foot strip. This fence was constructed about the year 1911 by the owner of the land lying to the west and a predecessor in title of the defendants. The defendants purchased the property to the west in 1943 and have owned it ever since and up to the time this suit was filed.

Guy J. Drummond and his wife Susie purchased the land to the east in 1944. Defendants, the Burrells, and the Drummonds occupied their respective lands and it may be said that the old fence was considered to have been constructed on the line as described in their respective deeds. Mrs. Burrell and Mrs. Drummond attempted to tear down the fence and remove it. They succeeded to a certain extent but the task was more than they had bargained for so at the time of the trial some of the posts were still in place.

It may be said that the evidence of the Burrells and the Drummonds did not justify a finding that the Drummonds were claiming the 10-foot strip by adverse possession. We add, however, that the evidence did justify a finding that title by adverse possession had been acquired by the predecessors in title before the Drummonds purchased the land. We need not review the evidence as to adverse possession but may concede, without so deciding, that title by adverse possession had been established before the Drummonds acquired the land to the east of the strip by deed. The view we take of the case is that plaintiffs cannot maintain the present action for the reason that they do not have any interest in the land in controversy.

The following facts about which there is no dispute compel the conclusion stated above: O. T. Gillenwaters, a developer of lands, began negotiating for the purchase of the Drummonds' tract sometime in 1953 or 1954, culminating in a sale of the land to him by a deed executed on October 8, 1954. Gillenwaters testified that he intended to subdivide the land and therefore employed an attorney to examine an abstract of title. The attorney found a discrepancy and required a survey be made of the property. After the discrepancy was discovered, Gillenwaters had a conversation with Mrs. Drummond, so he testified, to the following effect:

"A. Yes; my attorney required the survey in order to partially straighten it out.

"Q. And you talked to Mrs. Drummond about it? A. Oh, yes. He required them to make the survey.

"Q. Now when this discrepancy showed up, what conversation did you have with Mrs. Drummond, what did you say to her and what did she say to you about it? A. Well, she said that she had bought so many feet, but the west line was her boundary; there was an overage in there she didn't know about. I don't believe, to her knowledge, that she knew of this over-age. She never had it surveyed, but she did claim the west boundary as the line.

"Q. By 'west boundary,' you mean the fence was her west boundary? A. That's right. And she never had it surveyed, and she didn't know there was an overage; to my knowledge, neither did Mr. Burrell, until the survey showed up."

A survey was made which disclosed that the true dividing line between the Drummonds' and the defendants' property, according to their deeds, was not the fence line but about 10 feet east of the fence. Stakes were placed along the true boundary line as surveyed. The plat of this survey was in evidence as plaintiffs' Exhibit No. 3. The date shown on this plat is September 22, 1954, which was 16 days before the deed conveying the Drummonds' property to Gillenwaters was executed. The deed conveying the property to Gillenwaters did not include the 10-foot strip. Note what Gillenwaters said in answer to questions asked by the trial court:

"Q. Let me ask you this, Mr. Gillenwaters: The deed which the Drummonds made to you was dated October 8th, 1954. Now, on September the 22nd of that year, this blue print was prepared by the surveyor. Did you have that before you and in mind at the time of the final negotiations? A. Oh, yes. Certainly.

"Q. And you knew that there was a strip of ground, approximately ten feet wide, over here on the east end of the property now—east side of the property now owned by the Burrells, and the west side of the property now owned by Lurvey, a strip of ground approximately ten feet in there that you were not getting a deed to? A. Yes, we figured we was getting that by adverse possession, your honor.

"Q. All right. I see. A. That was being transferred by that affidavit; my attorney told me that that was the thinking, that we were getting title to it by adverse possession, and she was conveying it that way.

"The Court: All right."

The affidavit, referred to, reads as follows (without showing signatures):

"Guy J. Drummond and Susie E. Drummond, being first duly sworn upon their oath state that they have been in actual, *upon* and notorious possession of the following described real estate for the past ten (10) years and that the fences and boundary lines along the West and South portions of said tract of land have been located in their present positions all during that time, as follows, to wit: Commencing at a point 414 feet West of the Northeast corner of Section 31, Township 29 North, Range 21 West, thence South 660 feet, thence West 397 feet, thence North 400 feet, thence East 170 feet, thence North 260 feet to the North line of said Section 31, thence East 227 feet to the point of beginning, containing five acres, more or less, in Greene County, Missouri."

The description of the property in that affidavit does not include the strip of land involved in this suit and is the same description in so far as the west boundary line is concerned as the description contained in the deed of conveyance to Gillenwaters. Gillenwaters conveyed the land to the plaintiffs in this case, using the same description as indicated by the survey. He also gave plaintiffs a quitclaim deed by which he transferred all of his right, title,

and interest in the 10-foot strip in question.

It is evident that plaintiffs acquired by the quitclaim deed the interest, if any, of Gillenwaters to the land in dispute. The question is, did Gillenwaters have any interest in the property in dispute? We are of the opinion that he did not.

Gillenwaters, during the negotiations for the purchase of the property, demanded a survey be made of the property he was to acquire. His request was granted. The survey disclosed that the fence was ten feet west of the true line. He accepted a deed knowing at the time that it did not include the 10-foot strip of ground. The deed conveyed the same property that was surveyed. He resold the property by the same description. Then, he executed a quitclaim deed for the 10 feet. Mrs. Drummond testified that all she claimed was 4 acres and when the land was surveyed, they deeded to Gillenwaters all of their land and refused to convey the 10 feet of ground to either the plaintiffs or Gillenwaters. We may state here that the description in the affidavit, supra, covered one acre lying to the east of the property conveyed to plaintiffs.

■ If the Drummonds acquired the 10 feet by adverse possession, a question which we are not deciding, they still owned it at the time of trial. It is a well established rule of law that there must be a conveyance of property claimed by adverse possession by some act (by gift or otherwise) in order to effectuate a transfer of such property from the adverse holder to the grantee. Absent this, there can be and there is no transfer to the grantee of any right acquired by the grantor. In Auldridge v. Spraggin, 349 Mo. 858, 163 S.W. 2d 1042, loc. cit. 1044, there was a gift coupled with granting of possession and an agreement as to the dividing line. In Lewis v. Beaverton Power Co., 231 Mich. 585, 204 N.W. 768, loc. cit. 769, there was a deed which conveyed the land held by adverse possession. In Robertson v. Boylon, 214 Mich. 27, 181 N.W. 989, loc. cit. 990 (2), the court made the following comments apropos to the present case: "But if we were to assume that Miss Gardner and her grantees occupied the strip claiming to own it, plaintiffs would still be prevented from claiming title in these proceedings. They purchased only 28 feet. They saw it before purchase. They did not purchase the title to the disputed strip. The defendants have the paper title. Unless plaintiffs' grantors conveyed their right to the disputed strip, plaintiffs could not tack their adverse possession to theirs, which they would have to do in order to establish their title by adverse possession."

Rulings to the same effect may be found in Effert v. Greim, Sup., 15 N.Y.S.2d 935; Killmaster v. Zeidler, 269 Mich. 377, 257 N.W. 721. See also 1 Am.Jur. 882, 883, Sec. 156, and 2 C.J.S. Adverse Possession § 131, p. 694, and subdivision d. at page 697, where it is stated: "A mere sequence of possession in several grantors is insufficient, in the absence of proof or testimony, to show the grantors' intent to convey to the grantees land not expressly included in the descriptions in each of the several conveyances."

In 1 Am.Jur. 797, Sec. 13, it is stated that at the expiration of the limitation period, the holder of the land by adverse possession becomes the legal owner of title "which can only be divested by his conveyance of the land to another, or by a subsequent disseisin for the statutory limitation period." It has also been ruled that a conveyance by deed does not convey land held by adverse possession, not included in the deed, unless there is evidence or some circumstance showing that it was intended to be included. Alukonis v. Kashulines, 96 N.H. 107, 70 A.2d 202, 17 A.L.R.2d 1125, Annotations beginning at page 1130.

■ In the case before us, the deed not only did not include the land in question but after both grantor and grantee were fully aware of the situation, the grantor knowingly did not include the disputed area

in the deed and the grantee with knowledge of that fact accepted the deed. Furthermore, one of the grantors was a witness called by the plaintiffs and she testified that it was not intended that the land in dispute be conveyed. In such circumstances, the grantor in this case did not acquire any interest in the 10-foot strip and hence could not convey any to the plaintiffs.

The Great Southern Savings & Loan Association, a corporation, was named as a defendant because it held a deed of trust on the Burrell property. All of the defendants in this case, by way of a cross bill, requested that the court enter a decree vesting the title in defendants. This cannot be done in this case for the reason that the Drummonds may have or may claim an interest in the property. They are not parties to this suit. In so far as the plaintiffs are concerned, we hold that they have no interest in the disputed tract of land and, therefore, the judgment in their favor must be and is hereby reversed.

All concur.