Fred M. KARCHES, Walter Graul and J. R.
Sutherland, Plaintiffs-Appellants,

v.

ADOLPH INVESTMENT CORPORATION,
a Missouri Corporation, Defend-
ant-Respondent.

No. 33106.

St. Louis Court of Appeals.
Missouri.

June 14, 1968.

Ziercher, Tzinberg, Human & Michenfelder, Robert C. Jones, Clayton, for plaintiffs-appellants.

Armstrong, Teasdale, Kramer & Vaughan, Donald U. Beimdiek, St. Louis, for defendant-respondent.

BRADY, Commissioner.

Plaintiffs are trustees of Lake Sherwood, a subdivision, and instituted this action against defendant, the owner of a 34-acre tract of land abutting the subdivision. Plaintiffs seek declaratory judgment and injunctive relief to limit defendant's and its assign's use of easement rights as to East and West Sherwood Drives, the access roads to defendant's land.

Defendant's tract of land and the subdivision were originally owned by the Schuermann Building and Realty Company which in September of 1947 plotted Lake Sherwood Subdivision. Lake Sherwood Subdivision was laid out in somewhat of an ell shape. The southern boundary of Lots 5, 6, and 13 form the northern boundary of defendant's tract. On the west defendant's tract of land runs up to the east boundary of West Sherwood Drive extending southwardly from approximately the middle of Lot 21 to the southernmost boundary of Lot 29. In the subdivision Lots 1 through 10 inclusive border on and use East Sherwood Drive while Lots 11 through 29 inclusive border on and use West Sherwood Drive for access to and from Lackland Road.

In connection with the platting of the subdivision the Schuermann Company prepared and recorded an instrument entitled "CONDITIONS, RESTRICTIONS, PROVISIONS * * *" for the subdivision. In October of 1947 the Schuermann Company deeded defendant's tract to Norman Schuermann and his wife and these parties lived upon this tract until September of 1965 when they deeded the 34-acre tract to others in the chain of title under which defendant holds title. Defendant has submitted a plat to the proper authority by which

it intends to divide this tract of land into 42 lots, all of which would have access to Lackland Road through East and West Sherwood Drives. The specific portions of the "CONDITIONS, RESTRICTIONS, PROVISIONS" instrument which are here in issue are to be found on pp. 4 and 5 thereof and read as follows: "PARCEL NO. 1 shall be divided into 10 building sites, numbering from one to 10 inclusive, as delineated on the said plat. No residence shall be constructed on any of said building sites numbered from 1 to 10 inclusive unless said residence shall cost not less than $16,000.00. The roadway, 30 feet wide, the center line of which is 1167.52 feet East of the East line of Brown Road as measured along the South line of Lackland Road, hereinbefore described, shall be maintained by the Trustees appointed in this instrument. Contributions to the maintenance of the roadway shall be made by the owners of the building sites fronting on said roadway, each of whom shall contribute one-twelfth of the total. Said roadway shall be a private roadway for the use of the abutting lot owners. *So long as the Schuermann Building and Realty Company, its successors or assigns, shall own property at the Southern termination of said roadway then the said Schuermann Building and Realty Company, its successors or assigns, shall have the right to the use of said roadway. In consideration therefor its contribution shall be two-twelfths of the total maintenance cost of said roadway.* * * * PARCEL NO. 5 shall be divided into 16 building sites, as indicated on the said Plat and the plots numbered from 14 to 29 inclusive. No residential building costing less than $12,000.-00 shall be erected on any of these plots. The private roadway, 30 feet wide, serving sites numbered 11 thru 29, inclusive, shall be maintained by the Trustees for the use of the owners of building sites numbered 11 to 29, inclusive, and *assessments for the maintenance of said roadway shall be based upon the front footage of each site on said roadway.* For the purposes of assessment the front footage of site No. 28

shall be arbitrarily assumed to be 135 feet and on site No. 29, 150 feet. No assessment shall be made for the maintenance of said roadway on property now owned by the Schuermann Building and Realty Company lying East of said roadway and South of building sites 13, 6 and 5. *If, at some future date, however, the Schuermann Building and Realty Company, its successors or assigns, desire access to said roadway then such access shall be given for the use and benefit of the owner or owners of said property lying East of said roadway and South of building sites 13, 6 and 5. Such access shall be made available at the maintenance charge as above described."* (Emphasis supplied.)

In June of 1949 a "SUPPLEMENTAL RESTRICTION AGREEMENT" was filed providing Norman Schuermann and his wife, their heirs, successors and assigns, would pay two-twenty-firsts and the owners or occupants of Lots 11 to 29 inclusive of Lake Sherwood Subdivision (those fronting on West Sherwood Drive) would each pay one-twenty-first of the annual cost of maintenance repairs or reconstruction of the storm or sanitary sewer system, sewage disposal plant, fire plugs, entrance lights "* * * located in or on West Sherwood Drive or which serves or may be used by owners or occupants of said Lots 11 to 29 inclusive of Lake Sherwood."

The issue here involved arises from defendant's stated purpose of connecting the roadways in his proposed subdivision development of this 34-acre tract to East and West Sherwood Drives. The petition alleges that by terms of the instrument and in particular by the underlined portion in that paragraph relating to PARCEL NO. 1 Schuermann, defendant's predecessor in title, was required to contribute two-twelfths of the total cost of maintenance of East Sherwood Drive. This proportion is arrived at due to the fact there now exist on the defendant's tract two residences other than that of Mr. Schuermann. Plaintiffs' position is the restriction instrument grants to the defendant's tract the right to use East Sherwood Drive for access for those two residences only and no right of access was given or intended for any additional residences. In essence, the contention as to West Sherwood Drive is the same; i.e., that it was established for the exclusive use of Lots 11 through 29 of Lake Sherwood, was incapable of supporting additional traffic, and defendant had no right to connect the roadway to the lots in his proposed development to West Sherwood Drive. In the second count of the petition plaintiffs pray for an injunction preventing defendant from subdividing the tract in such a manner that more than two residences thereon could use East and West Sherwood Drives for access. As stated in its answer, defendant's position is that as successor to Schuermann it has a right of access to East and West Sherwood Drives for the use and benefit of owners of lots in the subdivision to be developed by it on the 34-acre tract subject only to the restriction the owners are required to pay a proportionate share of the cost of maintenance of said roadways with the owners of other lots using them.

During the time Norman Schuermann owned defendant's tract and occupied it as his residence he prepared a plat for subdividing the property and submitted it to the proper city authorities for approval. The evidence is that at that time he stated that if it was approved he would approach the trustees to determine how he might arrange to use East and West Sherwood Drives for the subdivision he planned. Although his plans were approved Schuermann later abandoned the project.

Plaintiffs offered testimony to the effect that at the time they and other lot owners in Lake Sherwood purchased their properties from Schuermann he told them he was building a large residential home on the tract now belonging to defendant and it would be maintained as a single estate. On this issue defendant offered the testimony of John Bogdanor, an employee of Schuermann from 1946 to 1960 as general

manager of the Schuermann Building and Realty Company. He testified the instrument to be construed in this action was prepared by Schuermann's attorney and that he insisted on the preparation thereof. The gist of his testimony was that restrictions were deliberately left out of this instrument because at the time the instrument was prepared Schuermann's intention was that the tract which defendant now owns might some day be subdivided and developed and in that event East Sherwood Drive would be available for the use of those buying lots therein at two-twelfths of all maintenance cost for the roadway and if, upon such development, access was desired to West Sherwood Drive that access would be given for the use and benefit of owners of property lying within defendant's tract at two-twenty-firsts of all maintenance cost as to West Sherwood Drive. Bogdanor's testimony as to such matters was given over the objection of the plaintiffs.

As a result of the findings of fact and conclusions of law entered by the trial court its decision was defendant and those to whom it might sell lots have the unrestricted right to use both East and West Sherwood Drives for access to this property, this right being an easement appurtenant to the dominant estate, defendant and its successors being required to pay only two-twelfths of the total maintenance cost of East Sherwood Drive and a proportionate cost for the maintenance of West Sherwood Drive based on a frontage of 949.74 feet.

East and West Sherwood Drives are established on the plat of Lake Sherwood at thirty foot widths and at the present are paved to a width of twenty feet. Plaintiffs offered testimony from an expert witness who stated the asphalt surface has an average depth of approximately two inches and gave as his opinion that such a surface would not support the added traffic from defendant's proposed subdivision.

Before passing to consider the law upon this issue we note there are at least three things which are agreed upon or are so clearly shown by the exhibits as to be accepted as proven beyond dispute. First, defendant's tract lies at the southern termination of East Sherwood Drive. Second, defendant is the successor in title to the Schuermann Company. Third, as stated in plaintiffs' brief, "Defendant's property constitutes the dominant estate and the right to use East Sherwood is an easement appurtenant to the dominant estate, * *."

A recent annotation as to the law upon disputes of this nature may be found in 10 A.L.R.3d 947, following the report of Cox et al. v. Glenbrook Company, 78 Nev. 254, 371 P.2d 647. As is true in the instant appeal the plaintiff in Cox sought a declaratory judgment regarding the scope of a right-of-way easement. In that case the defendant was proposing to subdivide a tract of 80 acres into 40 or 60 parcels. In the case at bar the figures are 34 acres into 42 parcels. In both cases the easement rights in dispute were as to two roads. It is difficult to find two cases more similar upon the facts. The Nevada court held the purchasers of the lots in the subdivided dominant estate had the right to use these roads.

The Restatement of the Law of Property also clearly points to that same decision. Section 488, entitled "Apportionability of Easements Appurtenant", reads: "Except as limited by the terms of its transfer, or by the manner or terms of the creation of the easement appurtenant, those who succeed to the possession of each of the parts into which a dominant tenement may be subdivided thereby succeed to the privileges of use of the servient tenement authorized by the easement." Comments following that section are likewise illuminating. "Comment b. *Subdivision of dominant tenement*. The burden upon a servient tenement frequently will not be greatly increased by permitting an easement appurtenant to attach to each of the parts into which the dominant tenement may be subdivided. Though some increase in burden may result from the fact that the

number of users is increased by the subdivision, *the extent of the use is still measured by the needs of the land which constituted the original dominant tenement.* Moreover, dominant tenements are ordinarily divisible and their division is so common that it is assumed that the possibility of their division is contemplated in their creation. Hence, unless forbidden by the manner or terms of its creation, the benefit of an easement appurtenant accrues upon a subdivision of a dominant tenement to the benefit of each of the parts into which it is subdivided." (Emphasis supplied.) In Comment c. it is pointed out that absent clear prohibition it is assumed a dominant tenement may be subdivided into various parts and the parts may utilize the easement appurtenant to the dominant tenement.

■ There is another issue discussed in Cox which also arises in the appeal at bar. In Cox the easement granted used the words "with full right of use over the roads * * *" there involved. The court held that phrase to be clear and unambiguous and thus not subject to judicial interpretation by consideration of extrinsic evidence concerning the parties' intentions as to the extent of the easement. In so ruling the court was relying upon the well recognized principle that the extent of an easement created by a conveyance is fixed by the conveyance if it is clear and unambiguous. Restatement, Property, § 482, Comment a. Accordingly, the court in Cox held that the trial court had committed error when it considered extrinsic evidence and used such evidence to construe the unambiguous phrase contained in the easement. In the instant case plaintiffs urge the words "so long as" as used in the instrument entitled "CONDITIONS, RESTRICTIONS, PROVISIONS" with reference to PARCEL NO. 1 and as set out earlier herein, to quote from their brief: "* * * can only be defined to mean that the right in Schuermann was limited to the use being made of the roadways at the time the restriction instrument was execut-

ed—for the two houses then on that property." Of course, that definition is opposite to the meaning of the words as they are written in the instrument and could only be arrived at by interpretation or construction thereof. However, plaintiffs fail to point out wherein this phrase is in any way ambiguous and thus authorize such interpretation or construction. The only portion of their brief dealing with that matter advances the contention the verbal statements Schuermann made to plaintiffs and other lot owners after the execution of the instrument here involved to the effect the tract he then owned and which now belongs to defendant would be maintained as a single estate, should be considered and compel modification or change of the plainly stated language of the instrument.

■ There are several reasons plaintiffs' position is untenable. First, it again assumes the plainly written language in the instrument is ambiguous without giving any reason for such assumption perhaps because the clarity with which the provision here involved is phrased in the instrument makes such a contention difficult to state. Another basis for ruling this contention adversely to plaintiffs lies in the fact that even if we were to hold such evidence could be considered it would at best raise only an issue of fact. The plaintiffs' testimony as to Schuermann's intention is directly opposed by Bogdanor's testimony as to what Schuermann's intention was. In cases of directly disputed or controverted testimony we defer to the finding of the trial court which accepted defendant's version. In connection with its argument of this point plaintiffs cite and rely upon South Side Realty Co. v. Hamblin, Mo. App., 387 S.W.2d 224, l.c. 229, wherein it was held in effect the interpretation placed on a contract by the parties thereto is entitled to great, if not controlling, influence in ascertaining the intent and understanding of the parties. Of course, that may be true where the contract is ambiguous and that ambiguity cannot be resolved by reference to the language of the instrument it-

self. But that is not the situation in the instant appeal. Language in an opinion cannot be lifted out of context and cited as support for a theory advanced in a factual situation far different from that presented to the court when it was writing the opinion. No cases are cited in the Hamblin case for the statement upon which plaintiffs rely, and while it may have been the applicable law under the factual situation there presented such an abstract statement has no pertinence when placed within the context of the facts involved and issues presented by the instant appeal. Accordingly, since the provision here involved is unambiguous there is no need for this court to resort to extrinsic evidence as an aid to construction. Restatement, Property, § 482, supra.

■ Plaintiffs next contend the contemplated use of the roadways by defendant involves such a greatly increased and additional burden as to prevent defendant from exercising such rights. It must be kept in mind that we are dealing with an easement granted in general terms as contrasted to one limited in the usage thereof. They cite the principle that a right-of-way cannot be used so as to burden the servient estate to a greater extent than that contemplated or intended at the time of the grant. See 3 A.L.R.3d 1256, § 5, l.c. 1269 et seq. The applicability of that principle depends upon the nature of the proposed extended use.

As stated in Restatement, Property, § 488, Comment b.: "* * * the extent of the use is still measured by the needs of the land which constituted the original dominant tenement." In 25 Am.Jur.2d, Easements and Licenses, § 74 (Manner of use), p. 480: "It is not restricted to use merely for such purposes of the dominant estate as are reasonably required at the time of the grant or reservation, but the right may be exercised by the dominant owner for any purposes to which that estate may be subsequently devoted. Thus, there may be an increase in the volume

and kind of use of such an easement during the course of its enjoyment." In that same work at § 77, p. 484, it is said: "Furthermore, no unlawful additional burden is imposed on the lands of a servient estate by an increased number of persons using an unlimited right of way to which the land is subject." In support of their position plaintiffs cite Gerber v. Appel, Mo. App., 164 S.W.2d 225. This case is not in point upon the issue for which it is cited by plaintiffs. Gerber involved an attempt to change an easement for a walkway to one for vehicular traffic. The cases cited therein also deal with a change in the character of an easement such as the attempted use of electric street cars upon an easement for horse-drawn cars and the erection of a smokestack in an easement for an alleyway. Moreover, the limited nature of the easements there involved must be contrasted to the general terms in which the grant was phrased in the appeal at bar. The change in usage here involved is one of degree rather than character. We can find no Missouri case holding an increase in the number of vehicles using an easement granted in general terms for roadway purposes constitutes such an increased burden thereon so as to prevent the contemplated increase. Neither can we conceive of why such should be the law. Such a ruling would certainly be inconsistent with Comment b., § 488, Restatement of the Law of Property, supra, wherein the division of dominant tenements is said to be assumed in their creation. Plaintiffs' contention is certainly not the general rule. 25 Am.Jur.2d, Easements and Licenses, supra.

■ From what has been held above it follows defendant and those claiming under him as a result of any subdivision of the dominant estate have the unrestricted right to use both East and West Sherwood Drives. It is also clear that as to East Sherwood Drive the total obligation of the defendant and those who purchase from him is limited to two-twelfths of the total maintenance cost of said roadway. The

instrument creating the easement plainly and unequivocally so states.

With regard to West Sherwood Drive the contribution to be paid by the dominant estate was placed upon a somewhat different basis in the instrument. It provides for access to be made available and assessments for the maintenance of West Sherwood Drive to be "based upon the front footage of each site on said roadway." In his brief plaintiffs' counsel attacks the trial court's order calling for "* * * a proportion of the cost of the maintenance of West Sherwood 'based on a frontage of 949.74 feet'." He asks: "Under the order, what portion would defendant's properly bear?" We believe that question must have been asked more for argumentative purposes than to seek information.

As stated in their brief plaintiffs recognize 949.74 feet as being the agreed length of West Sherwood Drive from the south line of Lot 13 in Lake Sherwood to the south terminus of that drive. The instrument provides "assessments for the maintenance of said roadway shall be based upon the front footage of each site on said roadway." This can only mean that the total cost of maintenance shall be divided by the total length of West Sherwood Drive expressed in feet to determine cost per foot. This cost must then be multiplied by 949.74 feet to determine defendant's assessment just as the cost per foot is multiplied by the footage fronting on the drive of each of the lot owners in Lake Sherwood to determine their assessment. So, too, will the assessment of each individual lot after defendant has subdivided and sold be determined. It is difficult to see how plaintiffs' counsel could fail to arrive at such computations after reading the trial court's decree. Mathematical calculations flowing inevitably from the adoption of a formula need not be spelled out in detail, the trial court being entitled to assume the parties and their counsel can make such computations.

So far as the briefs disclose there is no real dispute as to the provisions of the "SUPPLEMENTAL RESTRICTION AGREEMENT". The provisions therein requiring the defendant, as a successor in title to Norman Schuermann and his wife, to pay two-twenty-firsts of the costs therein enumerated are clear and unambiguous and do not require judicial interpretation or construction.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of this Court. The judgment is affirmed.

ANDERSON, P. J., RUDDY, J., and JAMES H. KEET, Jr., Special Judge, concur.