Elmer G. NOWOTNY et al.,
Plaintiffs-Appellants,

v.

Jack H. RYAN, Mayor of the City of St.
George, et al., Defendants-Respondents.

No. 36513.

Missouri Court of Appeals,
St. Louis District,
Division One.

Feb. 24, 1976.

Motion for Rehearing or Transfer
Denied March 10, 1976.

Application to Transfer Denied
April 14, 1976.

Harry Gershenson, Gershenson & Gershenson, Clayton, for plaintiffs-appellants.

John J. Stewart, Clayton, for defendants-respondents.

DOWD, Judge.

The plaintiffs in this court-tried class action suit are a number of residents of a condominium development known as "Southridge Town and Terrace Apartment Homes" (hereinafter Southridge). The defendants are the officers of the City of St. George, a fourth-class municipality located in south St. Louis County.

The plaintiffs' petition for declaratory judgment sought a decree that the defendants be required to maintain and repair the streets in Southridge. The petition also asked for $18,000 actual damages.

Plaintiffs' theory of recovery was that the condominium streets had been set apart and statutorily dedicated to the City of St. George and the public at the time of Southridge's formation. Alternatively, plaintiffs alleged there had been "a de facto dedication and use thereof by said City and the public." The trial court found for the defendants. We affirm.

Southridge, which has 380 units, is located in south St. Louis County, at the intersection of Interstate Highway 55 and Reavis Barracks Road. The condominium project was formerly an undeveloped tract of land bordering the City of St. George. In March 1965 the St. Louis County Circuit Court entered an order authorizing the annexation of this land to the City of St. George. In April 1965 the St. Louis County Council passed an ordinance annexing Southridge to the City of St. George.

There are now three streets in Southridge: Villaridge Court, Echoridge Lane and Bunker Hill Drive. On April 29, 1965, the Southridge developers filed a plat with the St. Louis County Recorder of Deeds. This official plat showed only Villaridge Court and noted: "Villaridge Lane, 50 feet wide, together with its roundings . . .

is hereby dedicated to public use forever. The easements shown on the plat hereon are hereby dedicated to public use forever for public utility, sewer, drainage, or sidewalk purposes." The easements shown on the plat are narrow 10 foot strips that are marked "10′ W Easement." Echoridge Lane and Bunker Hill Drive do not appear on the plat, but they do tend to follow some of the easement markings. A City of St. George ordinance in April 1965 expressly accepted the dedication of Villaridge Court but did not mention the other two streets.

Villaridge Court, which enters Southridge from Reavis Barracks Road and terminates within the development, is conceded to be a public street that the city has always maintained. The other two streets wind through Southridge, connecting at one place with Reavis Barracks Road and at other places with Villaridge Court. The two streets are 20 feet wide unmarked lanes bordered on both sides by parking places 20 feet deep at right angles to the central driving lane. The only two entrances to Southridge are Villaridge Court and Bunker Hill Drive which intersect with Reavis Barracks Road.

The record does not show just when Bunker Hill Drive and Echoridge Lane were built. Nor is it clear whether these two streets were built by the Southridge developers or the Southridge Board of Managers. But it is clear the City of St. George did not build the two streets and has never repaired or maintained them. Since about 1967, however, the Southridge Board of Managers has expended about $18,000 to maintain and repair Echoridge Lane and Bunker Hill Drive.

The Southridge residents pay taxes to the City of St. George. In return the municipality furnishes police protection and trash collection. The city, as noted above, fully maintains Villaridge Court. Since about 1967 Southridge has requested police traffic patrols on all three Southridge streets, but the record is unclear whether such patrols were ever actually furnished. The testimo-

ny differed as to whether the City of St. George or Southridge had erected the traffic signs on Echoridge Lane and Bunker Hill Drive.

The evidence demonstrated the two disputed streets supported a rather limited public use: the Southridge residents and their guests, deliveries, people who became lost while driving on Reavis Barracks Road, occasional sightseers and motorcyclists, and voters who travelled to and from a polling place in the Southridge community center. At one time a "Private: No Soliciting" sign stood at the Bunker Hill Drive entrance to Southridge, but this sign was removed prior to the trial.

Although Southridge managers had discussed with city officials the possibility of municipal maintenance for the two disputed streets, they did not formally demand public maintenance until the summer of 1973. The City of St. George denied their demand, and this suit ensued.

We review this court-tried case both upon the law and the evidence, giving due regard to the trial court's opportunity to have judged the credibility of the witnesses. Rule 73.01(3).

On appeal plaintiffs do not seriously contend that Southridge statutorily dedicated Bunker Hill Drive and Echoridge Lane to the public when it filed its plat under Chapter 445 RSMo 1969. As noted above, this plat specifically dedicated only Villaridge Court and various easements. No mention was made of the dedication of the other two streets, nor does the plat even show these two streets. See *Welch v. City of Blue Springs*, 526 S.W.2d 379 (Mo.App.1975); *State ex rel. State Highway Commission v. Johns*, 507 S.W.2d 75 (Mo.App.1974).

■ The plaintiffs alternatively contend Southridge has made a de facto or common law dedication of Bunker Hill Drive and Echoridge Lane to the city. Chapter 445 does not in any way restrict the common law power of an owner to devote his land to the use of the public. *City of St. Charles v. DeSherlia*, 308 S.W.2d

456[6] (Mo.App.1957). In order to establish a common law dedication it must be shown that (A) the owner, by his clear and unequivocal action, intended to dedicate his land to the public use, and (B) the land so dedicated has been accepted and used by a government unit or by the general public. *Hoechst v. Bangert*, 440 S.W.2d 476, 478, 479 (Mo.1969).

■ We do not find a clear and unequivocal intent to dedicate Bunker Hill Drive and Echoridge Lane to the public use. The evidence established the streets have been maintained by Southridge since at least 1967. A "Private: No Soliciting" sign had once stood at the Bunker Hill Drive entrance to the development. Although Southridge residents had sometimes expressed to city officials their desire for municipal maintenance of the two streets, they did not make formal demand on the defendants until 1973. Finally, we cannot view Southridge's willingness to have a polling place located in its community center as an unequivocal expression of intent to dedicate the streets to the public use.

Nor do we find that the public or the City of St. George ever accepted Southridge's purported common law dedication offers. The very limited public use of Echoridge Lane and Bunker Hill Drive, as enumerated above, is clearly insufficient to signify the public's acceptance of the dedication of the streets.

The City of St. George, at the time of the annexation, passed an ordinance accepting the developers' dedication of Villaridge Court. However, the city never passed an ordinance accepting the other two streets, never repaired or maintained the two streets, and actually rejected all attempts to have it maintain the two streets.

Plaintiffs stress that the St. Louis County Circuit Court's March 1965 decree authorizing the annexation indicated an agreement by the city to maintain Echoridge Lane and Bunker Hill Drive. The court's Conclusions of Law did mention that the city was able

to furnish "street maintenance, street cindering and snow plowing . . . to the area to be annexed." But since the court decree does not mention the two streets, and since the official plat filed one month later dedicated only Villaridge Court to the public use, we find plaintiffs' contention unpersuasive.

■ Plaintiffs next maintain that since the city collected municipal taxes from the Southridge residents, and since the city counted the condominium residents in computing its share of state and county gas tax monies, then the city should have used at least part of those tax funds to maintain the two disputed streets. In this connection the plaintiffs allege their Fourteenth Amendment rights to due process and equal protection of the laws have been violated. However, there was no evidence that the city had applied for or received any public funds from any source upon the representation that the funds would be used to repair or maintain the two disputed streets. Nor was there any evidence the funds were allocated to the city in the belief that they would be so used. In the absence of such evidence we choose not to question the manner in which the city spent its tax monies.

Plaintiffs claim that other indications of the city's acceptance of Southridge's common law dedication of the two streets include (1) the traffic signs the city erected on the two streets and (2) the sign "City of St. George, Speed Limit 25 Miles per Hour" the city posted at the Bunker Hill Drive entrance to Southridge. The testimony was unclear whether the city or Southridge had posted the traffic signs along the two streets. The City of St. George speed limit sign at the Southridge entrance was notice to a motorist of the simple fact that he was crossing a municipal boundary; we do not interpret the sign as suggesting that all the streets in the city were public roads.

Finally, plaintiffs rely heavily on a July 1972 city ordinance entitled "An Ordinance Applying the Traffic Laws of the City of St. George to Undedicated Street and Ways." The ordinance provided that all ordinances pertaining to the operation of motor vehicles upon the public streets and roads of the city were now applicable to Bunker Hill Drive and Echoridge Lane. The ordinance's preamble reads:

"WHEREAS there are certain private and undedicated streets, roads, and ways in the City of St. George, and

WHEREAS said streets, roads, and ways are commonly known as North Bunker Hill Drive; South Bunker Hill Drive; Echo Ridge Lane; and Bunker Hill Lane, and

WHEREAS these streets, roads, and ways connect with public dedicated streets and serve as a conduit between dedicated streets, and

WHEREAS these streets, roads, and ways are utilized by the general public in traveling and driving throughout the City of St. George, and, in particular, in traveling and driving to, through, and between public dedicated streets, and

WHEREAS it is the finding of the Board of Aldermen that the aforesaid streets, roads, and ways are de facto public streets."

■ We first note that the title of the ordinance and the ordinance itself carefully label the two disputed streets as "private" or "undedicated." Secondly, the ordinance carefully distinguishes between these two private streets and the "public dedicated streets" (presumably Reavis Barracks Road and Villaridge Court) that they connect. Thirdly, the ordinance's express purpose is the regulation of motor traffic on Echoridge Lane and Bunker Hill Drive and the maintenance of the streets is not mentioned. Lastly, the ordinance's labelling of the two streets as "de facto public streets" is a correct assessment of the streets' dual nature. The two roads are privately owned and maintained, but the owners of the streets have apparently given the public a license to travel on the two streets. The

courts of this state have held in similar circumstances that a city, in the exercise of its police powers, may regulate the use of motor vehicles upon all streets which are rightfully used by the public within its municipal boundaries, *regardless of their legal status.* It is the public uses to which a street is put that gives rise to the city's right and duty to regulate the flow of traffic upon it. *City of Clayton v. Nemours,* 237 Mo.App. 167, 164 S.W.2d 935[11–13] (1942).

In summary, we uphold the trial court's findings that the plaintiffs have failed to show that the two streets were dedicated, either by statute or the common law, to the public or the City of St. George.

The judgment is affirmed.

WEIER, P. J., and RENDLEN, J., concur.