James I. CHEATHAM et al.,
Plaintiffs-Respondents,

v.

Tina MELTON et al., Defendants,

Euel Cheatham and Virginia Cheatham,
Defendants-Appellants.

No. 41009.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 15, 1980.

Ray E. White, Jr., Clayton, for defendants-appellants.

Jack C. Stewart, Richeson, Roberts, Wegmann, Gasaway, Stewart & Schneider, P. C., Hillsboro, for plaintiffs-respondents.

GUNN, Presiding Judge.

This appeal arises from a fraternal dispute over the use of a common driveway or roadway located upon the boundary between two contiguous parcels of land owned respectively by two brothers and their spouses. The germ seeds of the disagreement were planted when defendants-appellants Euel Cheatham and his wife attempted to permit a public utilization of the driveway as a means of crossing land owned by them as an access to various destinations.

Plaintiffs-respondents James Cheatham and his wife, being jealously solicitous of their privacy and repose, objected to the expanded use. After informal attempts to stem the tide of public traffic proved futile, James Cheatham brought this trespass action for damages and an injunction against his brother Euel and wife, their son and his spouse residing on a portion of Euel's parcel, and certain other persons residing in a nearby subdivision, the latter being principally responsible for the increased use of the driveway. From a judgment awarding nominal damages and enjoining all defendants from utilizing the driveway for any purpose other than gaining access to or egress from the parcels owned by the brothers, only defendants Euel Cheatham and his wife Virginia appeal. Appellant-defendants' principal contentions before us are that the trial court erred in finding there had been no common law dedication of the driveway to the public; that the public use was concurrent and did not interfere with or overburden the brothers' enjoyment of the driveway, also contrary to findings of the trial court; and that the injunction impermissibly interfered with defendants' use of their own land.

We amend the injunction decreed by the trial court in accordance with the principles embraced in this opinion and, as amended, affirm.

Visualization of the graphic circumstances is crucial to an understanding of the case. A simplified diagram of the involved area illustrates as follows:

The following account is based on the record before us. James and Euel Cheatham, together with their respective spouses, purchased lot 11 (see diagram) of Mount View Subdivision in Jefferson County in 1947. In 1951, the lot was divided as appears on the diagram and the division line surveyed. The brothers assisted each other in constructing a residence for each family on their respective portions of lot 11. A common driveway [1] was jointly constructed at that time and subsequently maintained by the brothers for the purpose of gaining access to the residences. It was located on the boundary line between the two plots so that it lay in part on land belonging to each brother. The driveway was, in effect, an extension of Forest Lane, a Mount View Subdivision street which terminated at the southern boundary of lot 11. The common driveway did not cross lot 11 but terminated in a turnaround or loop located near a common well used by the brothers approximately 100 feet north of lot 11's southern boundary. It was used by all the Cheathams, including defendant Euel's son Grover and his wife who purchased and resided upon a portion of Euel's parcel, under a tacit agreement between them that it was a joint driveway. Plaintiff James Cheatham testified that he had no objection to its use by any of the Cheatham defendants for access to lot 11 or use by any other persons visiting or having business with them. There was evidence that the driveway had always been used by tradesmen, delivery personnel, mail carriers, business invitees and other private visitors to the residences on lot 11, all without objection by anyone.

The present difficulties arose in 1974, when Euel acquired some additional property to the north of lot 11, including a parcel in exchange for an easement in favor of certain persons owning lots in Tangee Terrace subdivision. The easement coincides with a road built on and across Euel's parcel as indicated on the diagram and merges with the joint driveway. The roadway established along this easement thus had the effect of opening up the joint driveway to through public traffic. James objected to the increase in usage and among other measures placed signs at either end of the joint driveway declaring the public use to be forbidden. His attempts to curtail the expanded use ultimately proved ineffectual, and this suit was brought against the Euel and Grover Cheatham families, together with those persons residing in Tangee Terrace and holding the easement granted by Euel. The trial court found that the driveway was a common drive with reciprocal prescriptive rights thereto in each brother, and that it had always been, and still remained, private in nature despite defendant Euel's attempts to open it up to expended or public use. The defendant Cheathams were enjoined as follows:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY the Court that Plaintiffs, James I. Cheatham and Dorothy Cheatham, his wife, and Defendants Euel Cheatham and Virginia Cheatham, his wife, and Grover Cheatham and Barbara Cheatham, his wife, have joint access rights to and from Lot Eleven (11) of Mount View Subdivision from Forest Lane northward along an established roadway upon or near the division line between the properties of Plaintiffs and Defendants, to an existing well curb and no further, for the purpose of gaining access from Forest Lane upon and to Lot Eleven (11), but not for the purpose of gaining access from or to Lot Eleven (11) from or to lands to the north of said Lot Eleven (11); that said Parties and those holding under them as to tenancies and interest in Lot Eleven (11) have the same rights to said joint road and driveway; and the interest of said persons and those claiming under them and their successors shall be subject to said joint road and driveway.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the court that all of the Defendants and their heirs, successors and assigns acquiring interest from said Defendants after September 25, 1975, be, and they are hereby perpetu-

---

1. Euel Cheatham insists that the disputed drive is not a "driveway" but, rather, a roadway; its appellation is really of no matter.

ally enjoined from entering upon Lot Eleven (11) of Mount View Subdivision as described herein and the common driveway thereon and the road constructed from the north end of said driveway to the northern boundary of Lot Eleven (11) for any purpose other than gaining access to or from said Lot Eleven (11) to or from Forest Lane of said Mount View Subdivision.

■ Before proceeding to the merits of the case, we consider the challenge raised by James to the sufficiency of the jurisdictional statement, statement of facts and "points relied on" of Euel's brief on appeal. While Rule 84.04, governing the form and contents of appellate briefs, should be strictly applied if the fairness and efficiency of the appellate process is to be preserved, *Associates Discount Corp. of Iowa v. Fitzwater,* 518 S.W.2d 474 (Mo.App.1974), application of the rule must be balanced against our duty to finally dispose of each case on the merits where reasonably possible. *State ex rel. Mayfield v. City of Joplin,* 485 S.W.2d 473 (Mo.App.1972).

■ Although some deficiencies do exist in Euel's jurisdictional statement, it is, at least, minimally acceptable. *Gilmore v. Letcher,* 508 S.W.2d 257 (Mo.App.1974). The same is true of the statement of facts and the points relied on. *See: Thummel v. King,* 570 S.W.2d 679 (Mo. banc 1978); *Hayes v. Reynolds,* 579 S.W.2d 119 (Mo.App. 1979). We discern no prejudice to James as a result of the asserted deficiencies, nor are we caused unreasonable uncertainty or effort in comprehending Euel's position on the issues. *See: Parker v. Wallace,* 473 S.W.2d 767 (Mo.App.1971). We decline to dismiss Euel's appeal, but we do stress and urge upon counsel the importance of following the tenets of Rule 84.04; its mandate is simple enough. *City-Wide Asphalt Co. v. City of Independence,* 546 S.W.2d 493 (Mo. App.1976).

■ On the merits, Euel first complains that the trial court should have found a common law dedication of the common driveway, asserting that its use by persons serving or visiting the residents of lot 11 was clear evidence of both an intent to dedicate it to public use and public acceptance thereof. But he overlooks the fact of James' immediate actions to prevent the opening of the common driveway to through traffic traveling over Euel's lands as a Tangee Terrace access. In light of this circumstance, and remembering that the persons using the drive prior to 1974 were essentially private visitors to the residents of lot 11, we find no evidence in the record of such "convincing and unequivocal" indicia of intent by the owners of the common driveway to create a public right in that drive adverse to themselves as is required to support a finding that dedication had taken place. *Ackerman v. Roufa,* 584 S.W.2d 100 (Mo.App.1979); *Nowotany v. Ryan,* 534 S.W.2d 559 (Mo.App.1976).

■ Euel next complains that he had the right as a matter of law to unilaterally grant "concurrent" rights in the common driveway easement to the persons residing in the subdivision north of lot 11.[2] While it is true that "[t]here may be concurrent easements over the same servient tenement as long as the second easement is not inconsistent with the first easement," *Kiwala v. Biermann,* 555 S.W.2d 663, 666 (Mo.App. 1977), the short answer to Euel's argument is simply that the rights he attempted to grant the Tangee Terrace residents were neither "concurrent" nor consistent with James' existing rights in the common driveway. The driveway was created and used until 1974 for the purpose of private access to lot 11. Euel's attempt to expand the driveway into a public thoroughfare traversing the entire lot entailed more than an increase in the number of vehicles utilizing the drive.[3] A change in the quality and

---

**2.** This argument applies only to the portion of the driveway lying on Euel's side of the line dividing lot 11. Euel did not purport to grant the Tangee Terrace residents an easement to that portion of the drive located on James' land, although as a practical matter traffic utilizing the drive would necessarily travel on

plaintiffs' land to the extent the drive was on James' land.

**3.** Euel argues that a mere increase in the number of vehicles using an easement does not materially alter the burden on that easement, citing *Kiwala* and *Karches v. Adolph Invest-*

nature of the traffic using the drive was involved, as the record indicates. No longer restricted to private visitors to lot 11, strangers to the residents would be traversing the driveway as through traffic, including, as the evidence shows, heavy construction vehicles capable of damaging both the repose of the residents and the driveway itself. The trial court correctly concluded that the "character and extent" of the reciprocal prescriptive rights in the drive were "fixed and determined by the use under which [they were] gained," *Holian v. Guenther*, 471 S.W.2d 457, 459 (Mo.1971), i. e., limited to private driveway use; and that the later easement in favor of the Tangee Terrace residents constituted an impermissible attempt to "materially alter the character of the [original] servitude." *Gerber v. Appel*, 164 S.W.2d 225, 228 (Mo.App. 1942). This aspect of the judgment is fully supported by evidence and neither misstates nor misapplies the law. We may not disturb it. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

In their final point the Euel Cheathams complain that the injunction impermissibly interferes with their use of the roadway connecting the common driveway with the northeast corner of their parcel of lot 11. That road is located on land owned by them, and unlike the common drive, is free of any rights, prescriptive or otherwise, in the James Cheathams. The precise language involved appears in the first paragraph quoted from the trial court's decree. It follows the declaration of joint rights to the common drive in both plaintiffs and the defendants and purports to forbid use of the common drive "for the purpose of gaining access from or to Lot Eleven (11) from or to the lands north of said Lot Eleven (11)." As James concedes, this language was not intended to bar the Euel Cheathams from using their own roadway between the lands to the north of lot 11 and the wellhouse where it adjoins the common driveway. However, the conclusion is inescapable that the order could be construed to

prohibit the Euel Cheathams personally from using the joint driveway in conjunction with travel over the roadway located on their own land. And, indeed, James argues for such construction of the order. That interpretation as urged by James clashes violently with the fundamental precept that "[t]he law favors the free and unrestricted use of property." *Weber v. Les Petite Academies*, 548 S.W.2d 847, 852 (Mo.App.1976). Moreover, a property owner may not be enjoined from enjoying the lawful incidents of ownership absent a showing that the acts complained of constitute a damaging incursion of a fixed and determined property right in another. *Moseley v. City of Mountain Grove*, 524 S.W.2d 444 (Mo.App.1975), *Higday v. Nickolaus*, 469 S.W.2d 859 (Mo.App.1971). Although there was abundant evidence to sustain the trial court's conclusion that unrestricted public use of the common drive was injurious to plaintiffs, the record is desolate of any indication that personal use of the common drive by the Euel Cheathams in conjunction with their own roadway could have any injurious effect on plaintiffs or their rights. The trial court did not purport in its decree to find that such was the case factually, nor could it have so found on the basis of the record. That portion of the injunction purporting to restrict the Euel Cheathams from personal use of the roadway traversing their portion of lot 11 in conjunction with the common driveway, including their travel between areas inside and outside lot 11, would be without legal justification and, accordingly, would be an erroneous application of the law. *Howe v. Standard Oil Co. of Indiana*, 150 S.W.2d 496 (Mo.App.1941). If flawed, the trial court's order must be rectivied on this review. *Murphy v. Carron; Arrington v. Westport Bank*, 577 S.W.2d 166 (Mo.App.1979). The injunctive order and decree of the trial court is therefore modified—insofar as it proscribes such use—to permit the Euel Cheathams, their heirs, successors and as-

---

ment Corp., 429 S.W.2d 788 (Mo.App.1968). This is true only where the easement in question was originally granted in the first instance for "*roadway purposes*". *See: Id.* at 793.

Both cited cases deal with easements originally granted for subdivision streets and have no application where the easement in question arose for a private residential driveway.

signs, the utilization of their portion of lot 11 of Mount View Subdivision in conjunction with travel over the common driveway referred to in this opinion or for any other purpose consistent with and not violative of the James Cheathams' rights in the common driveway or other rights set forth in the trial court's decree, except as modified.

Judgment affirmed as modified.

STEPHAN and PUDLOWSKI, JJ., concur.