**Bonnie Jo DERRYBERRY,**
**Respondent,**

v.

**Teddy CRAIG, Jr., Appellant.**

**No. SD 30463.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 8, 2011.

---

Jaired B. Hall, Houston, for Appellant.

David G. Neal, Eminence, MO, for Respondent.

DANIEL E. SCOTT, Chief Judge.

Teddy Craig appeals from an adverse judgment regarding his 25–foot access easement, which burdens his northerly neighbor, Bonnie Jo Derryberry. We affirm the judgment in part, reverse in part, and remand.

### Background

In the 1990s, Randall and Lisa Bland owned a landlocked, undeveloped 40–acre tract in rural Shannon County where they hoped to build a home. They bought a 25–foot ingress-egress easement from their neighbors to the north, Rufus and Goldie Norris, whose 10–acre home place was at the end of a public road. The easement, created by deed for a stated consideration of $1,500, was described as follows:

> AN EASEMENT TWENTY–FIVE (25) FEET IN WIDTH OVER AND ACROSS THE WEST TEN (10) ACRES OF THE NW¼ OF THE SE¼ OF SECTION 19, TOWNSHIP 27 NORTH, RANGE 3 WEST, FOR ROADWAY PURPOSES TO PROVIDE GRANTEES WITH UNRESTRICTED INGRESS AND EGRESS FROM THEIR LAND, BEING THE SW¼ OF THE SE¼ OF SECTION 19, TOWNSHIP 27 NORTH, RANGE 3 WEST, TO THE COUNTY ROAD WHICH RUNS IN A GENERAL EAST AND WEST DIRECTION ACROSS THE N ½ OF THE NW¼ OF THE SE¼. THE EASEMENT SHALL RUN IN A GENERAL NORTH AND SOUTH DIRECTION ALONG THE EXISTING ROADWAY WHICH LIES CLOSE TO THE EAST SIDE OF THE GRANTORS' TEN (10) ACRE TRACT DESCRIBED ABOVE. THE EASE-

MENT HEREIN CONVEYED SHALL BE APPURTENANT TO AND RUN WITH THE OWNERSHIP OF GRANTEES' LAND HEREIN DESCRIBED AND SHALL EXIST FOR THE SOLE USE AND BENEFIT OF GRANTEES AND THEIR HEIRS, SUCCESSORS, ASSIGNS, AND THEIR GUESTS; SAID EASEMENT IS NOT HEREBY DEDICATED TO PUBLIC USE AND MAY NOT BE USED BY ANY MEMBER OF THE PUBLIC WITHOUT THE EXPRESS CONSENT OF THE GRANTEES OR THEIR AGENTS, HEIRS, SUCCESSORS, OR ASSIGNS.

The Blands' building plans fell through and they sold the land to Craig in 2001. Derryberry bought the Norris place four years later. She knew of the easement, which had an unimproved grass and dirt road winding through the trees and a gate near each end.

Viewing the trial testimony most favorably to the result, Derryberry sought and obtained Craig's permission to move the north gate 97 feet nearer the public road to protect her property from trespassers. According to Derryberry, Craig then accused her of stealing his gate and told her that he planned to subdivide and develop his 40 acres for residential and business uses. Derryberry filed a "preemptive" lawsuit for declaratory and injunctive relief seeking ownership and control of the gate and to limit the easement to use by one single-family residence. Craig counterclaimed for a determination that he owned and controlled the gate.

Trial commenced in September 2009, some four years after suit was filed. Craig represented himself. Derryberry, for all practical purposes, was the only witness. The court expressed its prelimi-

nary thoughts after the evidence and closing arguments, and continued the trial so the parties could try to reach an agreement. Trial resumed six months later after the parties failed to settle. Derryberry called Lisa Bland as an additional witness, Craig also testified briefly, and both parties rested.

The court found that the "proposed or projected development of [Craig]'s tract—subdividing it into multiple residential lots or even for some commercial utilization"—would materially alter and transform the easement "into a *de facto*, if not actual, public thoroughfare." Thus, the court declared that Craig and his successors in interest could not convey easement or usage rights "to anyone other than a single family (single household) or single individual, and without reserving any such right or interest in himself," unless Derryberry or her successors or assigns agreed. Further, the court ruled that if Craig or his successors ever subdivided the 40 acres, he/they must acquire expanded easement rights from Derryberry or her successors, or else "seek another route linking those tracts to a public road."

As to the gate, the court found all claims and issues in Derryberry's favor, ruling that the gate was a fixture which she owned and was entitled to move, and enjoining Craig from removing or tampering with it.

Craig's appeal raises overlapping complaints which he treats as seven points, but which we reorganize for ease of discussion.

**After–Trial Motions**

Craig complains that the trial court denied his post-trial motions [1] "based on a lack of jurisdiction," without considering their merits, due to his simultaneously-filed notice of appeal.

---

1. Craig's motion for reconsideration and alternative motion for new trial essentially are treated the same in a court-tried case. *See In* *re Marriage of Wardlaw,* 809 S.W.2d 470, 472 (Mo.App.1991).

We need not second-guess the court's ruling[2] because we find no prejudice. *See VonSande v. VonSande,* 858 S.W.2d 233, 236 (Mo.App.1993) (alleged error in denying new trial motion must have prejudiced party seeking new trial). Although every order *allowing* a new trial must state the ground(s) on which the new trial is granted (Rule 78.03[3]), trial courts need not rule on such motions at all. *See* Rule 78.06. Craig's sole suggestion of prejudice is a desire "to preserve all alleged errors for appeal," but no after-trial motion was needed to do so in this non-jury case. Rule 78.07(b).[4] Point denied.

### Declaratory Judgment Regarding Easement Scope

■ The trial court's single-user interpretation of the easement is not supported by evidence,[5] is inconsistent with law, and cannot stand. *See Grider,* 325 S.W.3d at 440.

A right-of-way appurtenant to land is appurtenant to every part of it. It inures to the benefit of all the owners' heirs, however many there may be, and, if the owner divides it into several lots, the grantee of each lot, however small, has an equal right over the servient land, so far as applicable to his part of the property, provided the right can be enjoyed as to the separate parcels, without unduly increasing the burden upon the servient estate.

2 THOMPSON ON REAL PROPERTY § 322, p. 70 (1980). Missouri cases espouse similar principles. *See, e.g., Block v. Gallagher,* 71 S.W.3d 682, 684–85 (Mo.App.2002); *Gowen,* 875 S.W.2d at 641; *Burgess v. Sweet,* 662 S.W.2d 916, 919 (Mo.App.1983); *Cheatham v. Melton,* 593 S.W.2d 900, 904 (Mo.App.1980); *Karches v. Adolph Investment Corp.,* 429 S.W.2d 788, 791–93 (Mo.App.1968).

In *Karches,* for example, the owner of 34 acres on which two homes enjoyed ingress and egress via easement planned to subdivide the tract into 42 lots. The servient landowner claimed the easement should be limited to two residences. On appeal, the court noted that per Restatement (First) of Property § 488, successors to each part of a subdivided dominant estate succeed to the easement's privileges, except as limited by the terms of transfer or by the manner or terms of the easement's creation. 429 S.W.2d at 791. The court found "likewise illuminating" these official comments following § 488:

"Comment b. *Subdivision of dominant tenement.* The burden upon a servient tenement frequently will not be greatly increased by permitting an easement ap-

---

2. The order in question does not mention "jurisdiction." It considers instead the court's authority to act, an approach more consistent with *J.C.W. ex rel. Webb v. Wyciskalla,* 275 S.W.3d 249 (Mo. banc 2009).

3. Rule references are to Missouri Court Rules (2010).

4. Craig's remaining points do not relate to the judgment's form or language, so Rule 78.07(c)'s exception does not apply.

5. Craig faults the trial court for considering testimony about what the contracting parties intended. The intent of the parties "is controlling" in interpreting an easement. *Grider v. Tingle,* 325 S.W.3d 437, 449 (Mo.App.

2010). The trial court deemed it apparent from the deed that the easement was for limited, private, and restricted use, but such generalization did not wholly resolve these parties' disputes. The court mused, for example, about possible "mistakes in the paperwork" and contradictory indications in the "poorly written" deed. Thus, the judgment indicates that construction was "ascertained from the face of the document itself as augmented by the testimony of the witnesses," which case law authorizes. When "there is doubt as to the meaning, surrounding circumstances may be considered." *Id.; Gowen v. Cote,* 875 S.W.2d 637, 641 (Mo.App.1994).

purtenant to attach to each of the parts into which the dominant tenement may be subdivided. Though some increase in burden may result from the fact that the number of users is increased by the subdivision, *the extent of the use is still measured by the needs of the land which constituted the original dominant tenement.* Moreover, dominant tenements are ordinarily divisible and their division is so common that it is assumed that the possibility of their division is contemplated in their creation. Hence, unless forbidden by the manner or terms of its creation, the benefit of an easement appurtenant accrues upon a subdivision of a dominant tenement to the benefit of each of the parts into which it is subdivided." (Emphasis supplied.) In Comment c. it is pointed out that absent clear prohibition it is assumed a dominant tenement may be subdivided into various parts and the parts may utilize the easement appurtenant to the dominant tenement.

*Id.* at 791–92.

It is true that Derryberry testified that if Craig developed "numerous housing units and probably—and probably a business," she anticipated that "it would be like a freeway," with trash trucks, school buses, teenagers getting licenses and wanting to drive, etc., which in her mind "would definitely turn into a total public use"[6] and have a "very large impact" on her property value. Yet even if we assume these *arguendo*—and ignore Craig's testimony that he was considering two or three houses at most—there was no evidence that easement use by more than a *single* household or *single* individual would injure Derryberry or her interests. The trial court "did not purport in its decree to find that such was the case factually, nor

could it have so found on the basis of the record." *Cheatham*, 593 S.W.2d at 904. We are compelled to reverse this part of the judgment.

### Gate

■ Craig does not challenge the trial court's determination that Derryberry owns and was entitled to move the north gate, or that she must "immediately" furnish Craig a key if she decides to lock the gate. He argues instead that gates, by their mere presence, improperly restrict the easement. We are not convinced.

■ At least one gate was there when Craig bought his property, the gates served a valid purpose, and Craig has not argued otherwise. Lawfulness of the gates was a question of fact because the deed was silent on the subject. *Bedard v. Scherrer*, 221 S.W.3d 425, 428 (Mo.App. 2006); *Webb v. Finley*, 806 S.W.2d 501, 503 (Mo.App.1991). We have no basis to overturn the trial court's factual findings. At any rate, gates do not restrict an easement unless they interrupt or restrict its use. *See Brown v. Redfern*, 541 S.W.2d 725, 728 (Mo.App.1976). Craig offered no such evidence. Point denied.

### Conclusion

Derryberry is not entitled to the relief sought in Count I of her petition for declaratory relief, as to which the judgment is reversed and the case remanded for entry of judgment in Craig's favor. The judgment is affirmed in all other respects.

RAHMEYER, P.J., and FRANCIS, J., concur.

---

6. Legally, of course, it "is the character rather than the quantum of the use which controls in determining whether a road is a public

way." 2 THOMPSON ON REAL PROPERTY § 384, p. 526 (1980).