Coy G. **KENNEDY** and Leona J. Kennedy, Plaintiff-Respondents,

v.

Drexel **FINDLEY** and Martha A. Findley, Defendant-Appellants.

No. 28828.

Missouri Court of Appeals, Kansas City District.

May 31, 1977.

Thomas E. Ryan, Popham, Popham, Conway, Sweeny & Fremont, P. C., Kansas City, for defendant-appellants.

Downs & Pierce, Robert D. Colley, St. Joseph, for plaintiff-respondents.

Before SOMERVILLE, P. J., and WASSERSTROM and TURNAGE, JJ.

TURNAGE, Judge.

Coy Kennedy and his wife brought an action in ejectment against Drexel Findley and wife. The Findleys counterclaimed on the ground they had obtained title to the disputed real estate by adverse possession for more than ten years under § 516.010, RSMo 1969. The court found in favor of the Kennedys and ordered the Findleys to vacate the disputed land.

On this appeal Findley contends the court erred in finding in favor of Kennedy and in failing to find title to be vested in Findley by adverse possession. Reversed.

The Kennedys purchased the East half of Lots 2 and 3, Block 8, Plattsburg Land and Building Association in the City of Plattsburg, in 1953. Lot 2 is a tract 150 feet by 90 feet with the frontage on Clay Avenue which is Highway 116, the west boundary is Mulberry Street, the east boundary is an alley, and Lot 3 is to the south. Lot 3 is likewise a tract 90 feet by 150 feet. To the north of Lot 3 is Lot 2, on the west is Mulberry Street, on the east is an alley and on the south is Lot 6. The east half of Lots 2 and 3 would be a tract 75 feet east and west by 180 feet north and south, bounded by Highway 116 on the north, the alley on the east, the west half of such lots on the west, and Lot 6 on the south.

The Findleys are the owners of the east half of Lot 6. This tract is immediately south of the east half of Lot 3. The Findley tract was purchased by Robert Frost in 1957. At the time Mr. Frost purchased this lot, he was told the boundary between his tract and Lot 3 was a row of trees. Mr. Frost stated he believed he owned to the tree line, and, although he rented the property to tenants, he cleared the area up to the tree line and tore down an old shed which was located near the tree line.

At the time the Kennedys purchased their property, the same tree line was pointed out as the boundary to the Kennedys by their sellers. Both Mr. and Mrs. Kennedy testified that until 1970 they believed the tree line was the boundary between their tract and the Frost-Findley tract. The Kennedys both stated they did not occupy any property south of the tree line, nor did they make any claim of owning any land south of the tree line until 1970 when the Kennedys had occasion to examine their deed and decided their property had to extend south of the tree line in order to give them the 180 feet their deed called for.

Both Mr. and Mrs. Kennedy testified there was no dispute concerning the boundary line until 1970. Up to that time they did not claim south of the tree line nor did Frost or Findley claim north of that line. The Kennedys agreed that Frost's tenants, who occupied before Findley moved onto the Frost tract in 1964, had occupied up to the tree line. There is no dispute that after 1964 Findley occupied up to the tree line.

After Findley occupied the Frost tract, he had a garden just south of the tree line, and after he discontinued the garden, he seeded the area and kept it mowed. He stated the tree line consisted of small trees with the largest about eight inches in diameter. Thereafter, a clothesline was placed on this tract and the Findleys continued to occupy it and claimed it as being a part of their lot.

Shortly prior to 1967, Findley paid to have the trees forming the tree line cut. He discussed this with Kennedy and Kennedy made no objection since both parties, at that time, assumed the trees formed the boundary. In 1967 Findley erected a chain link fence running east and west on the old tree line. He also enclosed the disputed tract on the east and west to join the disputed tract with his backyard. Kennedy made no objection to the erection of the fence, again, because all the parties believed the fence was on the boundary.

The first question concerning the location of the boundary arose in 1970 when Mrs. Kennedy had occasion to examine their deeds and stated she did not believe their property extended 180 feet south from Highway 116. Nothing tangible was done, although conversations were held with the Findleys in which the Kennedys indicated they believed the Findleys were actually encroaching on the Kennedy land. The Kennedys testified Findley offered to buy the tract in question after a problem as to the location of the boundary arose. In 1973, the Kennedys had a survey made which showed the fence was built on the Kennedy property by 41 feet on the east and 41.4 feet on the west. It is this tract of about 41 feet north and south and 75 feet east and west, which is on the south part of the east half of Lot 3, which is in controversy.

At the conclusion of the evidence the trial court dictated informal findings of fact in which he indicated a belief that none of the parties knew the location of the boundary line and for that reason the claim of Findley did not meet the open, notorious, continuous and adverse parts of the test by which adverse possession is measured. Further, the court indicated that he did not believe Findley could tack his possession onto the Frost possession because Frost had conveyed to Findley only the east half of Lot 6 and had not conveyed to Findley by deed that part of Lot 3 which constituted the disputed strip.

■ The court was in error when he declared the possession of the disputed strip in this case could not meet the open, notorious, continuous and adverse test required to establish title by adverse possession. The basis of the court's belief in denying this claim was the ignorance on the part of all parties as to the location of the true boundary.

*Agers v. Reynolds*, 306 S.W.2d 506 (Mo. 1957) is a case remarkably similar to this case. In that case a claim of adverse possession, based on a claim up to a fence line in ignorance of the location of the true boundary, was upheld. The court quoted from two prior cases, *State ex rel. Edie v. Shain*, 348 Mo. 119, 152 S.W.2d 174 (1941) and *Bell v. Barrett*, 76 S.W.2d 394 (Mo. 1934), on the precise question here at 306 S.W.2d 506, 511[4] as follows:

"The principle, as stated in all of our prior decisions, may be reduced to this: If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse. It is not necessary that he intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. It is the intent to possess, and not the intent to take irrespective of his right, which governs. Possession is a legal concept. It involves two things: A present or, in the case of constructive possession, a past ability to con-

trol the thing possessed plus an intent to exclude others from such control. Or, in the language sometimes used in the cases, to exercise dominion over the object possessed. One may have such an intent in the case of property actually belonging to another, because he intentionally wants to take it away from the owner. But he may also have this intent because he is mistaken as to the facts of legal ownership."

The above rule adequately settles the controversy here. Both Frost and Findley stated they claimed up to the tree line which was replaced by a fence which completely enclosed the disputed strip. Kennedy admits he did not occupy or claim to own any part of this strip for more than ten years, while Frost and Findley did occupy the strip as their own. This undisputed state of facts is more than ample to support a finding of adverse possession on the part of Frost and Findley and demonstrates the finding by the trial court on this question of law was in error.

█ The trial court was likewise in error on the question of Findley tacking his possession to Frost. Frost testified unequivocally that from the time he purchased the property in 1957, he occupied and claimed to own up to the tree line which later became the fence line. Findley likewise made this same claim. While Frost conveyed only the east half of Lot 6 to Findley, he testified he intended to convey Findley all of the land running to the tree-fence line. Findley likewise testified he intended to purchase all of the land running to that same line. Kennedy verified this intent when he stated he understood Frost had conveyed the disputed strip to Findley. In *Crane v. Loy*, 436 S.W.2d 739 (Mo. 1968) the court stated at 743[4, 5]:

"Where a person having title by deed to a lot or tract of land described in the deed also has inclosed with it and is in possession of adjoining land to which he has no record title and conveys the land by the description in the deed, and delivers with it the possession of the entire inclosure, the continuity of possession will not be broken and the two possessions may be joined and considered as one continuous possession. *The point at issue is the intended and actual transfer of possession of the land held adversely.*" 5 Thompson, Real Property, Sec. 2551, p. 565. As previously noted "The possession of an adverse occupant need not be transferred by deed." *Ridgeway v. Holliday*, 59 Mo. [444] l. c. 453. In 1872 the court said, "Not even a writing is necessary if it appear that the holding is continuous and under the first entry." *Crispen v. Hannavan*, 50 Mo. 536, 549.

In this case Kennedy does not deny Frost intended to deed to Findley the disputed strip. Under the rule quoted in *Crane*, the possession of Findley is properly to be tacked to the possession of Frost.

Under the standard of review in this court-tried case, as defined in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) the judgment must be reversed because the court erroneously applied the law. For that reason judgment should be entered in favor of the Findleys on Kennedy's petition, and in favor of the Findleys on their counterclaim for adverse possession.

This cause is remanded to the circuit court with directions to enter a judgment finding the issues on the petition and on their counterclaim in favor of Findley and declaring the Findleys to be the owners of the disputed tract as shown by the survey, Exhibit I, and to declare that the Kennedys do not have any right, title or interest in and to such tract.

All concur.