Michael **HEIGERT**, et al., **Appellants,**

v.

**LONDELL MANOR, INC.,**
et al, **Respondents.**

No. 59304.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 28, 1992.

Robert L. Brown, Arnold, for appellants.

Patricia Ann Riehl, Hillsboro, Joe A. Johnson, Arnold, for respondents.

SATZ, Judge.

This court-tried case involves two basic disputes. A dispute over the ownership of a small triangular piece of land that abuts a travelled dirt road known as Hilltop Lane in Jefferson County, and a dispute over the use of that road. Plaintiffs, Sharron and Michael Heigert, and one of the defendants, defendant Lorene Money, own homes which face each other from opposite sides of the road.

For the most part, the record, including the exhibits, clearly describes the triangular tract in question as well as the related tracts of land. In many significant instances at trial, however, the particular area being referred to is not clearly described; some examples of these unclear references in the transcript are: "this

end", "that end", "there", or "here", with the notation "indicating"; "this point down here to this point here"; "the nearest boundary to you standing where you are".

Based on our understanding of the record, we set out a sketch of the disputed property, not drawn to scale:

The property in dispute is a triangular tract (Triangular Tract), at the southern end of defendant Lorene Money's property (Defendant's Tract), and at the northern end of the plaintiffs' property (Plaintiffs'

Tract). The Triangular Tract is narrow at its southern end and is about 20 feet wide at its northern end. It is about 155 feet long and abuts the northern edge of a dirt road located at the northern end of Plaintiffs' Tract.

The dirt road is an extension of a paved road, Hilltop Lane, and it is also commonly referred to as "Hilltop Lane". The dirt road originated as an access road to the farmhouse of Mr. and Mrs. Ollie Keller, whose farm encompassed most, if not all, of the land shown on the sketch. The farmhouse was located on the tract of land now owned by the Stones.[1]

Apparently, in the 1950's, the Kellers' son, Mr. Adolph Keller, began developing the farm, and he extended the dirt road as he developed the tracts now owned by the Dickermans, the Walters and the Schulenburgs. The entire road has been visible since its construction or extension by Adolph Keller.

Plaintiffs purchased their tract in 1978. They derive their title to their tract from Mr. and Mrs. Adolph Keller and three intermediate title holders. A survey of Plaintiffs' Tract made at the time of their purchase shows the northern boundary line of the tract running parallel to and a few feet south of the north edge of the dirt road, thus, on the survey, the dirt road crossed Plaintiffs' Tract, and, as it crossed that tract, most of the road was within the boundary lines of the tract.

Defendant Lorene Money received title to her tract in August 1988. She derives her title from Mr. and Mrs. Ollie Keller and several intermediate title holders. Among the significant intermediate title holders were the Matousheks, who obtained their title in May 1951. At that time, however, the legal description of the tract in their deed did not include the Triangular Tract now in question. Title to the Triangular Tract was transferred to the Matousheks in 1957. However, when the Matousheks transferred their title to their successors in

1962, they omitted the Triangular Tract from the description of the tract being transferred, and, thus, by deed in 1962, they only transferred the tract which had been transferred to them in 1951. Title to this tract of land, Defendant's Tract, was transferred by several successors in title and eventually transferred to defendant Lorene Money.

The dispute here erupted in 1987. Mr. Charles Money, the husband of defendant Lorene Money, was then developing the Hilltop Village Subdivision, north of the dirt road. He began to widen that part of the road which was north of the northern boundary of Plaintiffs' Tract and was within the Triangular Tract. He removed bushes, trees and plants from the northern edge of the road and began to put gravel on the road. The improved portion of the road was to be used as an access road to Hilltop Village.

Plaintiffs started to build a fence on the Triangular Tract in order to halt the widening of the road. They installed fence posts, which were removed by Mr. Money.

In November, 1987, plaintiffs initiated this action by filing their first petition, and, in August or September, 1989, they filed their fourth amended petition. Between those two filings, two additional relevant transfers of property interests occurred. In December, 1987, record title to the Triangular Tract was transferred to plaintiffs by the "apparent" heirs of the Matousheks. In August, 1988, Londell Manor, Inc., a company owned by Mr. Money, held record title to Defendant's Tract, and, in that month, Londell Manor transferred title to that tract to defendant Lorene Money.

In their fourth amended petition filed in August or September, 1989, plaintiffs joined defendant Lorene Money, individually, Mr. Money, and several other defendants who may have had an interest in the Triangular Tract or in the use of the dirt road.[2] In their petition, plaintiffs request-

---

1. For convenience, joint owners will be referred to by their surnames. No discourtesy is intended.

2. Among these other defendants were the husband of Lorene Money, Charles Money, and two of his corporations, Londell Manor, Inc. and

ed, among other things, a declaration of plaintiffs' and defendants' respective rights to use the dirt road and a request to quiet title to the Triangular Tract in them based upon their alleged adverse possession of the Tract or by virtue of the deed to that tract obtained from the "apparent" heirs of the Matousheks in 1987. Defendant Lorene Money counterclaimed, requesting the court to quiet title to the Triangular Tract in her based upon her alleged adverse possession of the tract.

The court found and decreed that defendant Lorene Money had acquired title to the Triangular Tract by adverse possession and also found and decreed that "Defendant[3] and all lot owners of Hilltop Village Subdivision have an easement" to use the road for travel. This appeal followed.

■■■ In this court tried case, we must sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Of equal importance, we defer to the trial court's resolution of credibility, Rule 73.-01(c)(2), and consider only those facts and inferences favorable to the prevailing party. *Slay Warehousing Co., Inc. v. Leggett*, 762 S.W.2d 63, 64 (Mo.App.1988).

### Adverse Possession

The trial court found that defendant Lorene Money had acquired title to the Triangular Tract by adverse possession. It made this finding by tacking her adverse possession to the adverse possession of her predecessors in record title.

■■■ The total of the tacked periods must be at least ten years. *Moran v. Roaring River Development Co.*, 461 S.W.2d 822, 831–832 (Mo.1970); § 516.010 RSMo 1986. For our purposes here, we begin the adverse period at least ten years prior to November 25, 1987, the date plaintiffs filed their initial petition. In November, 1977, Defendant's Tract was occupied and pos-

sessed by Mr. David Mueller (Mueller). Record title of Defendant's Tract had been transferred to him in April, 1974. His successors in title and defendant Money's predecessors in title were:

| | | |
|---|---|---|
| Saggios | – | 11/78 – 12/83 |
| Cardinal Real Estate | – | 12/83 – 10/86 |
| Londell Manor, Inc. | – | 10/86 – 8/88 |

Plaintiffs attack the trial court's finding of adverse possession on two grounds: (1) Mueller's possession was not "hostile" and, thus, did not meet an essential element of adverse possession, and (2) defendant Money's adverse possession of the Triangular Tract cannot be tacked properly to the adverse possession of that tract by her predecessors in title.

### Mueller's Possession

■■■ Adverse possession requires a showing that an occupier or user of land intended to possess the land as his or her own. *E.g., Beldner v. General Electric Co.*, 451 S.W.2d 65, 67–68 (Mo.1970). More specifically, it must be shown that the occupation or use of the land was actual, open and notorious, hostile, exclusive and continuous for ten years. *Id.; Teson v. Vasquez*, 561 S.W.2d 119, 125 (Mo.App.1977). The element of hostility does not imply ill will or acrimony. *Porter v. Posey*, 592 S.W.2d 844, 850 (Mo.App.1979). Moreover, to prove hostility, an express declaration of hostility need not be made. *Id.* Rather, hostile possession exists when the claimant occupies the land "with the intent to possess it as his own and not in subservience to a recognized, superior claim of another". *Teson*, 561 S.W.2d at 127.

■■■ Plaintiffs contend Mueller's use was not hostile because he testified that he did not claim any more land than his deed conveyed; i.e., Defendant's Tract. Mueller did so testify. But, he also testified that he laid claim to his entire front yard, which included the Triangular Tract, and would have disputed any contrary claims. Mueller treated the Triangular Tract as his front yard. He mowed the grass on the

---

Sure Built Homes, one of which was developing the Hilltop Village Subdivision.

3. Apparently, this is defendant Lorene Money.

Triangular Tract and removed a fence which was located on the tract. A sidewalk ran from the front door of his residence across the Triangular Tract to about one foot from the dirt road. In addition, based upon its view of photographs and survey exhibits, the court found that the Triangular Tract was a part of Mueller's front yard. These facts show Mueller's occupancy and use to be hostile.

During the period of Mueller's ownership of Defendant's Tract, the Pitts occupied Plaintiffs' Tract. As further evidence of the lack of Mueller's hostile possession of the Triangular Tract, plaintiffs rely on a conversation between Mueller and Mr. Pitts in which Mr. Pitts referred to the front yard of Defendant's Tract as his own and Mueller failed to dispute this statement.

Mr. Pitts' statement is not dispositive. Mueller testified that he thought Mr. Pitts was joking and would have disputed the claim had he believed Mr. Pitts to be serious. Moreover, the trial court found that Mr. Pitts was joking and also found that had Mueller believed Mr. Pitts was asserting a serious claim Mueller would have disputed it. Furthermore, the trial court concluded that Mueller's testimony that his claim was to be that of his deed was speculative and not credible when considered in the context of Mueller's entire testimony. We defer to the trial court's determination of credibility.

Furthermore, there was no showing that Mueller's occupancy and use of the Triangular Tract was permissive. During his ownership of Defendant's Tract, the Smiths and plaintiffs, as well as the Pitts, occupied Plaintiffs' Tract across the road. Mrs. Smith occasionally pulled weeds and trimmed ivy along the southern edge of the Triangular Tract, when she was "cleaning [her] yard", and, occasionally, children played on that tract. Mrs. Heigert said that she or her husband cut the grass on the Triangular Tract twice between 1978 and 1987, and they occasionally parked their cars on that tract. This testimony does not show that ownership of the Triangular Tract was in someone other than Mueller and, thus, in turn, cannot show his occupancy and use of that tract was permissive.

## TACKING

Plaintiffs challenge the trial court's finding that defendant Lorene Money acquired title to the Triangular Tract by adverse possession because, plaintiffs argue, defendant Money cannot properly tack her possession of the Triangular Tract to that of prior possessors to meet the statutory requirement of continuous possession for ten years. Plaintiffs' reason for this argument is neither clear nor explicit.

In their Point, plaintiffs state:

[Defendant's Tract] as conveyed [to defendant Money] did not carry with it any adverse possession of her predecessors as the disputed property was not described in her deed nor is it within the enclosure of or adjacent to the property conveyed to her as a distinct Lot [Defendant's Tract].

Admittedly, the Triangular Tract is not described in the deed conveying Defendant's Tract to defendant Lorene Money, but it is, contrary to plaintiffs' Point, adjacent to Defendant's Tract. The Triangular Tract adjoins Defendant's Tract and lies between Defendant's Tract and the northern edge of the dirt road.

More important, plaintiffs do not develop this Point in the Argument portion of their brief. In their argument, plaintiffs cite four cases, quoting portions from two of these cases, but fail to explain their relevancy. Two of the four cases are not tacking cases, *Courtner v. Putnam*, 325 Mo. 924, 30 S.W.2d 126 (1930); *Kelsey v. City of Shrewsbury*, 335 Mo. 78, 71 S.W.2d 730 (1934). The other two cases, *Lurvey v. Burrell*, 317 S.W.2d 458 (Mo.1958) and *Beldner v. General Electric Co.*, 451 S.W.2d 65 (Mo.1970), are, in part, tacking cases, but, plaintiffs fail to explain their relevancy.

We may not make plaintiffs' argument. We must remain impartial and not become a witting or unwitting adversary of defendants, fashion an argument for plaintiffs

and then search the record and the law to support that argument.

At the risk of doing an injustice to defendants, however, we believe plaintiffs argue that tacking is inapplicable here because defendant Lorene Money failed to show the requisite intention of Mueller, a prior possessor of the Triangular Tract, to convey possession of the Triangular Tract to the Saggios, Mueller's grantees by deed to Defendant's Tract. We therefore address the issue of intention as it applies to the tacking of possession of land adversely held by successive possessors where a deed is conveyed which does not contain within it a description of the land adversely held.

[redacted] The applicable principle is most fully set out in *Crane v. Loy,* 436 S.W.2d 739, 743–44 (Mo.1968):

> Where a person having title by deed to a lot or tract of land described in the deed also has inclosed with it and is in possession of adjoining land to which he has no record title and conveys the land by the description in the deed, and delivers with it the possession of the entire inclosure, the continuity of possession will not be broken and the two possessions may be joined and considered as one continuous possession. *The point at issue is the intended and actual transfer of possession of the land held adversely.* (emphasis theirs) (citation omitted).

[redacted] We found no express definition of "enclosure" or "enclosed" in our cases. From the facts of those cases, we take "enclosed" to mean: (1) the described deeded land and adjoining undescribed disputed land are entirely enclosed by a fence, wall or other enclosure; or (2) the undescribed disputed land adjoins the described deeded land and runs up to a fence or wall, thus, giving the undescribed disputed land a clearly seen demarcation and, in effect, "enclosing" it and the described deeded land. *See, e.g., Crane, supra,* 436 S.W.2d at 744–745; *Counts v. Moody,* 571 S.W.2d 134, 139 (Mo.App.1978); *Slentz v. Cherokee Enterprises, Inc.,* 529 S.W.2d 495, 499–500 (Mo.App.1975). From the visual demarcation and the possessor's adverse claim up to the demarcation, the court infers the possessor intended to convey what could be seen and was claimed.

The *Crane* court completed the applicable principle by stating that "the composite fact to be established is the intended and actual transfer or delivery of possession of such area to the grantee or vendee as successor in ownership or claim." *Crane, supra,* at 744. This principle applies both where title to the land adversely held has already vested in the grantor and where title has not vested and possession by grantor and grantee is to be tacked to satisfy the period of continuous possession required by statute. *See, e.g., Elliott v. West,* 665 S.W.2d 683 (Mo.App.1984) (vested in grantor); *Slentz, supra* (not vested in grantor). We therefore make no distinction in our discussion of the cases between these two circumstances.

[redacted] The question then becomes what is necessary to establish the grantor's intention to transfer land adversely held which adjoins and is enclosed with the deeded land. Clearly, the expressly declared transfer of possession by a grantor to a grantee is sufficient basis for tacking the adverse possessions of the grantor and grantee. *See, e.g., Kennedy v. Findley,* 552 S.W.2d 352, 355 (Mo.App.1977).

[redacted] When intention to transfer possession is not express, the issue becomes whether the facts and circumstances of the transfer *sub silentio* permit the finding of intention by implication. The strongest circumstances for doing so exists when the disputed area is enclosed within the area described by deed:

> Where the area not within the description of the instrument was inclosed with that in fact described and the purchaser entered into possession of the whole, the implication of a transfer of possession of the whole is usually very strong, and in ordinary circumstances amounts to a sufficient basis for tacking the two possessions notwithstanding the absence of words of express delivery of the entire inclosure.

*Crane,* 436 S.W.2d 739, 745. *See Auldridge v. Spraggin,* 163 S.W.2d 1042, 1045

(Mo.1942). ("The rule appears to be where land adversely held is included in the same enclosure with land owned and conveyed by the grantor, the taking of possession by the grantee of the entire enclosed area creates a privity with the grantor as to the portion not conveyed. Thus, the possession of such grantor becomes tacked to that of his grantee"). (citation omitted).

 Intention by implication is also shown when the undescribed disputed land adjoins the described deeded land and the undescribed disputed land runs up to an obvious boundary such as a fence. *See, e.g., Elliott v. West,* 665 S.W.2d 683, 692–693 (Mo.App.1984); *Paulsen v. Harold Tippett Oil Co., Inc.,* 593 S.W.2d 615, 617 (Mo.App.1980); *Counts v. Moody,* 571 S.W.2d 134, 139–140 (Mo.App.1978).

Here, there was substantial evidence from which the trial court could find by implication that Mueller intended to transfer possession of the Triangular Tract to the Saggios, Mueller's grantees of Defendant's Tract. The undescribed disputed tract, the Triangular Tract, adjoined the described undisputed tract, Defendant's Tract, and the former tract had a clearly seen demarcation—the northern edge of the dirt road. The northern edge of the road created a clearly seen line of demarcation visually enclosing the Triangular Tract with Defendant's Tract.

Moreover, Mueller testified that he claimed the entirety of his front yard, including the Triangular Tract. Mueller believed he owned all the land up to the dirt road, which included Defendant's Tract and the Triangular Tract. He treated the Triangular Tract as his front yard, and the trial court expressly concluded the Triangular Tract was part of the front yard. Mueller mowed the yard, including the Triangular Tract, and removed, without objection, a fence which was located on the Triangular Tract. A sidewalk ran from the front door of the residence on Defendant's Tract across the Triangular Tract to one foot from the roadway.

While Mueller did not expressly transfer possession of the Triangular Tract to the Saggios, or testify that he intended to do so, Mueller's testimony and that of Mrs. Saggio provide clear evidence by implication that Mueller intended to and did transfer possession of the Triangular Tract to the Saggios, and the Saggios took possession of the Triangular Tract. Mueller thought he owned the Triangular Tract. Mrs. Saggio testified that she assumed her tract went to the dirt road, that she claimed to the road, and that she and Mr. Saggio maintained the Triangular Tract. Mrs. Saggio also testified that "as far as [she knew]" her survey showed Defendant's Tract running up to the road.

These facts clearly imply Mueller's intent to transfer both the Defendant's Tract and the Triangular Tract. The grantor, Mueller, believed the Triangular Tract was described in the deed to Defendant's Tract and the grantees, the Saggios, based on visual inspection of the property, believed the Triangular Tract was being transferred as part of Defendant's Tract and went into possession of the Triangular Tract. The grantor understandably would not expressly deliver what the grantor believes is owned and conveyed within the deed.

The two cases cited by plaintiffs which involve tacking are distinguishable. In *Beldner v. General Electric Co.,* 451 S.W.2d 65, 74 (Mo.1965), the prior possessor had not testified at trial, and, although the undescribed disputed land apparently was adjacent to the described deeded land, the undescribed disputed land apparently had no visual demarcation.

Plaintiffs also cite *Lurvey v. Burrell,* 317 S.W.2d 458, in which the court held that the plaintiffs had no interest in a ten foot strip of land to which a predecessor in title may have acquired title by adverse possession. The predecessor in title, however, testified at trial not only that he did not intend to convey the undescribed disputed land, he knowingly omitted description of that tract from his deed. Moreover, the grantee knew the disputed tract was not included. *Id.* at 461–462.

### Easement

 Plaintiffs derive title to their tract from Mr. and Mrs. Adolph Keller, who, in

1958, conveyed Plaintiffs' Tract to the Clarks, two of plaintiffs' predecessors in title. The Keller–Clark conveyance was "[s]ubject to an easement of the roadway over the Western [Northern] portion of the ... tract." The trial court read this conveyance language to mean the Kellers were excluding the right or privilege to use the roadway from the bundle of rights and privileges that defined the ownership interest conveyed. Apparently, to the court, the Kellers excluded this easement for the purpose of reserving it to themselves as the dominant tenant for the use of the dominant estate, and, thus, the court concluded, the conveyance language created an easement appurtenant by reservation, the use of which could be expanded reasonably. This appurtenant easement—the use of the road—"runs" with the dominant estate; and, the court apparently reasoned that, since Defendant's Tract and the Hilltop Village Subdivision were tracts subdivided from the original dominant tract, defendant Lorene Money and the residents of Hilltop Village received the right or privilege to use the road along with the grant of their respective tracts. The court found that subsequent development of the dominant tract was foreseeable and, thus, found the resulting increase in use of the road was a change of degree and not character and, therefore, permissible.

Plaintiffs read this language differently. To them, the term "subject to" did nothing more than implicitly recognize an already existing prescriptive easement created by the adverse use of the landowners whose land abutted the dirt road in 1958. From this premise, we understand plaintiffs to argue that since this prescriptive easement is necessarily a function of the continued use or uses of the dirt road during the prescriptive period, the most expansive use during that period would have been for travel by the few landowners along the dirt road in 1958. Subsequent use of this prescriptive easement, plaintiffs argue, is limited to the use created by prescription, and, therefore, the dirt road can be used for travel only by those few landowners who used it in 1958 and their successors in interest.

Plaintiffs' argument is focused solely on the meaning of the term "subject to". They do not attack any other findings or conclusions of the court relevant to the easement in question. We address that single issue here. We read the conveyance language as the trial court did and, thus, do not address the legal effect of an easement created by prescription.

■■■■ The parties have not cited nor has our research disclosed any Missouri case in which the term "subject to" in a conveyance raised an issue which was the same as or similar to the issue here. *See, generally, Loumar Development Co. v. Redel*, 369 S.W.2d 252, 256 (Mo.1963). To determine the meaning of this term, we may use most, if not all, of the established techniques for interpreting written instruments. *See Restatement of Property*, §§ 241–248 (1940). We must ascertain the intent of the writer, here the conveyor, *Stroup v. Johnson*, 539 S.W.2d 711, 712 (Mo.App.1976). We take people as they are and language as it is; and, thus, even though the written words may not be ambiguous, we may consider the circumstances existing at the time they were written to interpret their meaning. *See, e.g., Knox College v. Jones Store Co.*, 406 S.W.2d 675, 680 (Mo.1966); *Restatement of Property*, § 242.

Here, there was sufficient evidence to support the trial court's conclusion that the Kellers reserved an easement appurtenant in their 1958 deed, with Plaintiffs' Tract the servient estate and all other platted lots within Hilltop Village the dominant estate. Ms. Harriette Walter, who resides along the dirt road to the east of Plaintiffs' Tract, testified that Mr. Adolph Keller's parents were the original residents and owners of a large tract which included Plaintiffs' Tract, Defendant's Tract, the Triangular Tract, and property north of those tracts, including what is now known as the Hilltop Village Subdivision. According to Mrs. Walter, Mr. Keller was living in a home on the lot now occupied by the Stones in the 1950's, and, in 1954, he developed the Walters' and Schulenburgs' lots by building homes on them. He extended the dirt road

to service these lots and then moved into the home on the Schulenburgs' lot. Subsequently, the date is not certain, he moved back into the home on the Stones' lot. In 1958, he conveyed Plaintiffs' Tract to the Clarks.

Keller extended the road for use by the owners of the Walters' and Schulenburgs' lots and those lots were developed from Keller's Tract. Thus, the use of that road could not have ripened into a prescriptive easement. The use, from the beginning, was permissive. Moreover, since Keller extended the road for use by those people who purchased the lots in 1954, he certainly must have intended to reserve the right or privilege to use the road for possible subsequent development of his tract of land, the dominant estate, when he conveyed Plaintiffs' Tract to the Clarks in 1958. In short, the easement was a right or privilege to be used to service the dominant estate and, therefore, was an easement appurtenant.

■ Furthermore, we assume the parties contemplated changes in the use of the servient estate made necessary by the normal development of the use by the dominant estate. *Karches v. Adolph Investment Corp.*, 429 S.W.2d 788, 793 (Mo.App. 1968). The increase of vehicular traffic on the road due to the development of the Hilltop Village Subdivision is an increase in a foreseeable use and not an impermissible change in character. *See, e.g., Robert Jackson Real Estate Co. v. James*, 755 S.W.2d 343, 346 (Mo.App.1988); *Karches, supra* at 793.

To support their argument, plaintiffs cite several cases in which the word "reserve", "reserving" or "reserved" is used in the respective deeds to create an easement by reservation. *Stotzenberger v. Perkins*, 58 S.W.2d 983, 985 (Mo.1933); *E.g., Brown v. Redfern*, 541 S.W.2d 725, 729 (Mo.App. 1976); *Stroup v. Johnson*, 539 S.W.2d 711, 712 (Mo.App.1976). By these citations, we assume plaintiffs are suggesting that "reserve" is required language in creating an easement by reservation. These cases neither hold nor teach that.

Plaintiffs also cite a Florida case in which the words "subject to" were held insufficient to create an easement. *Procacci v. Zacco*, 324 So.2d 180 (Fla.App. 1975). However, *Procacci* is distinguishable. In *Procacci* there was no unity of ownership between the supposed dominant and servient estates at the time of the conveyance and no evidence of any use of the land described as subject to the easement. Here, there was unity of ownership in Keller, and the roadway has been in constant use by the residences abutting it. A subsequent Florida case, construing the words "subject to a right-of-way across the East 30 feet", looked at the circumstances surrounding the deed and determined that an easement by reservation was created. *Behm v. Saeli*, 560 So.2d 431, 432 (Fla.App. 1990).

Judgment affirmed.

GRIMM, P.J., and CRANDALL, J., concur.