

# In the Missouri Court of Appeals
# Eastern District

SOUTHERN DIVISION

| | | |
|---|---|---|
| KENNETH WHITE and ELEANOR WHITE | ) ) ) | ED103636 |
| Appellants, | ) ) | Appeal from the Circuit Court of Madison County |
| v. | ) ) | 13MD-CC00141 |
| GEORGE MATTHEWS, | ) ) | Honorable Robin E. Fulton |
| Respondent. | ) | Filed:  December 27, 2016 |

Kenneth and Eleanor White, husband and wife ("Plaintiffs"), appeal the trial court's grant of summary judgment in their quiet title and trespass causes of action against their neighbor, George Matthews ("Defendant").  We reverse and remand.

## BACKGROUND

This appeal involves a dispute over ownership of a strip of rural land, consisting of 2.44 acres, running along the common boundary of the two abutting tracts of land owned by Plaintiffs and Defendant.  The southern border of Defendant's property ("Tract B") abuts the northern border of Plaintiffs' property ("Tract A"), and the strip of land in dispute apparently runs east-west between their respective properties ("Tract C").

**1.  The Individual Tracts of Land**

Tract A is a parcel of land sitting in Madison County, consisting of approximately 42 acres. For purposes of this appeal, the chain of title of Tract A traces back almost 50 years, and ownership of Tract A was always vested in certain members of the Neighbors Family until acquisition by Plaintiffs.

First, at some point in the distant past, Jessie and Rose Neighbors, husband and wife, acquired Tract A and began to possess the same. Second and thereafter, upon the death of Jessie and Rose Neighbors (circa mid to late 1990s),[1] ownership of Tract A was vested in Jessie and Rose Neighbors' son, James Neighbors. Third, in March 2009, upon the death of James Neighbors, ownership of Tract A was vested in the brother of James Neighbors, Richard Neighbors, via a beneficiary deed. Fourth, in September 2010, Plaintiffs—who appear to have owned property in close geographical vicinity to Tract A, Tract B, and Tract C for over 40 years[2]—acquired ownership of Tract A from Richard Neighbors.

Tract B is a parcel of land located in Madison County and rests north of Tract A. In February 1993, Defendant acquired ownership of Tract B, via a quit claim deed.[3]

Tract C—the disputed property at issue—is a rural strip of land, approximately 2.44 acres in size. Tract C runs east-west, along the common boundaries of Tract A and Tract B. For purposes of this appeal, Tract C has never been a separate piece of land included in its own deed; rather the land comprising Tract C is legally included in the quit claim deed, supra, for Tract B. Alternatively stated, it is undisputed Tract C is not included in the deed for Tract A that was acquired by Plaintiffs in September 2010.

---

[1] The record in this matter is murky and confusing at best.

[2] Whether Plaintiffs' observations, if any, as land neighbors of the Neighbors Family during their ownership of Tract A and during Defendant's ownership of Tract B may be relevant, circumstantial evidence we leave for the trial court's determination on remand.

[3] This quit claim deed is signed by an individual named Linda Paulette Matthews. This court is unaware of the circumstances preceding the execution of this quit claim deed. Thus, this court is unacquainted with the ownership of Tract B prior to 1993.

2

## 2. The Alleged Adverse Possession of Tract C

At some point in time during the course of the Neighbors Family[4] ownership of Tract A, it is undisputed a fence existed between Tract A and Tract B ("Original Fence"). Without dispute, this Original Fence was erected so as to cause Tract A to encompass Tract C. As a result of the Original Fence, the Neighbors Family, up to and including Richard Neighbors, exercised possession of Tract C. However, the record on appeal is void of any evidence regarding any written contract or agreement between any member of the Neighbors Family and Defendant recognizing Defendant's consent for the Neighbors Family to use and possess Tract C.

Upon a thorough review of the litigants' briefs and the record on appeal, this court is unable to find any evidence in the record to determine the year in which the Original Fence was erected or the individual who erected and/or maintained the Original Fence. The record is also silent as to the purpose for the placement of the Original Fence. Nevertheless, Defendant appears to argue the Original Fence was a fence of "convenience;" whereas Plaintiffs did not and do not plead any rationale for the location of the Original Fence.[5] As discussed, infra, the foregoing produces a firm impression with this court that genuine issues of disputed fact, indeed, require resolution.

On June 16, 2010, in preparation of selling Tract A,—prior to Plaintiffs' acquisition of Tract A—Richard Neighbors (then, the current owner of Tract A) commissioned a land survey so as to verify the property lines. The land survey revealed the Original Fence incorrectly demarcated the property lines of Tract A and Tract B. At the request of Richard Neighbors,

---

[4] "Neighbors Family" as used throughout this opinion, is employed to denote Jessie Neighbors, Rose Neighbors, James Neighbors, and Richard Neighbors, collectively.

[5] It is not surprising Plaintiffs do not necessarily tender a rationale for the placement of the Original Fence, as Plaintiffs were not the owners of the land during the construction of the Original Fence. Nevertheless, it should also be noted again, the date of construction of the Original Fence is unclear, thereby causing Defendant to possibly lack any knowledge regarding the purpose for the placement of the Original Fence, as well.

3

Defendant removed the Original Fence and constructed a new fence along the proper property lines, as set forth in the land survey ("New Fence").

Defendant claims the construction of the New Fence was performed prior to Plaintiffs' acquisition of Tract A. On the contrary, Plaintiffs presented evidence that conflicted with Defendant's assertions and evidence. First, Plaintiffs pled Richard Neighbors, in 2009 and in the presence of Defendant, represented to Plaintiff Kenneth White the Original Fence demarcated the accurate property line for Tract A. Second, during his deposition,[6] Plaintiff Kenneth White revealed he had inspected Tract A prior to the sale, and at the time of that inspection the Original Fence was standing. These two separate facts resulted in Plaintiff Kenneth White purportedly believing Tract C was included in Tract A when he purchased the same, even though Tract C was not included in the deed of Tract A. Upon a thorough review of the litigants' briefs and the record on appeal, this court is unable to determine the date on which the New Fence was erected and whether the New Fence was constructed prior to Plaintiffs' acquisition of Tract A.

### 3. Procedural Background

Almost three years after the purchase of Tract A, in July 2013, Plaintiffs commenced a cause of action for quiet title and injunction against Defendant, claiming they were the rightful owners of Tract C—the 2.44 acres of land between the New Fence and where the Original Fence stood. Plaintiffs averred Tract C should be awarded to them because their predecessors in title (one or more members of the Neighbors Family) had adversely possessed Tract C.

Subsequently, Defendant filed a motion for summary judgment, contending Plaintiffs failed to meet the required elements of adverse possession. Specifically, Defendant claimed Plaintiffs' predecessors in interest—three of whom are now deceased—had not satisfied the

---

[6] The litigants provided a mere 4 pages of this deposition testimony, further constraining this court's review.

hostility element of adverse possession. In support thereof, Defendant presented the affidavits of Richard Neighbors and Lorna Neighbors-Cole.[7] Both affidavits attested that the Neighbors Family never "adversely possessed or claimed title" to Tract C and the Neighbors Family use of Tract C "was with the consent and permission of" Defendant. Defendant elected not to proffer an affidavit of his own in support of his motion for summary judgment, nor did Defendant testify or present any argument at a hearing on the record.

In response thereto, Plaintiffs objected, on the basis of hearsay, to Defendant's reliance upon the affidavits of Richard Neighbors and Lorna Neighbors-Cole. In particular, Plaintiffs maintained neither Richard Neighbors nor Lorna Neighbors-Cole could attest to the belief or understanding of *their* predecessors in interest, James Neighbors, Jessie Neighbors, or Rose Neighbors, regarding the use of Tract C or the purpose of the Original Fence line. Accordingly, Plaintiffs averred that insomuch as Defendant presented no admissible evidence to defeat the "hostility" element of adverse possession there remained genuine issues of material fact precluding the grant of summary judgment in favor of Defendant.

In a written judgment, the trial court granted Defendant's motion for summary judgment ("Judgment"). In its Judgment, the trial court reasoned no genuine issues of material fact remained because Defendant presented sufficient evidence that Plaintiffs' immediate predecessor in title, Richard Neighbors, had used Tract C with Defendant's consent and permission. The trial court also stated Defendant pled that the Original Fence was known not to mark the actual property line and that it was just a "fence of convenience." As such, in granting summary judgment in favor of Defendant and against Plaintiffs, the trial court found Plaintiffs failed to satisfy all the necessary elements of adverse possession.

---

[7] Lorna Neighbors-Cole is the daughter of Richard Neighbors.

This appeal follows.

## DISCUSSION

Plaintiffs offer one point on appeal, arguing that the trial court erred in granting Defendant's motion for summary judgment based upon the trial court's conclusion that the use of Tract C by Plaintiffs' predecessors in interest was with Defendant's consent and permission and that Plaintiffs failed to meet all of the requirements of adverse possession. Accordingly, Plaintiffs maintain there remain genuine issues of material fact regarding the same. We agree.

### *Standard of Review*

Upon appeal from a trial court's grant of summary judgment, the standard of review by an appellate court is *de novo*. ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993); see also Crowe v. Horizon Homes, Inc., 116 S.W.3d 618, 621 (Mo. App. E.D. 2003) ("Summary judgment is a question of law and, therefore, is reviewed *de novo*."). This court not does defer to the trial court's grant of summary judgment, but, rather, "we use the same criteria the trial court should have employed in initially deciding whether to grant summary judgment." Hearod v. Baggs, 169 S.W.3d 198, 202 (Mo. App. S.D. 2005); see also Rule 74.04. We review the facts "in the light most favorable to the party against whom judgment was entered" and "accord the non-movant the benefit of all reasonable inferences from the record." ITT Com. Fin. Corp., 854 S.W.2d at 376.

"Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." Id. As the defending party in a quiet title cause of action, Defendant can establish its right to summary judgment by showing facts that negate any one of the elements of Plaintiffs' claim, or by demonstrating Plaintiffs have not been

able to produce, and cannot produce, evidence sufficient to permit the court to find the existence of any one of the elements. Crowe, 116 S.W.3d at 621. As the non-moving party, Plaintiffs "need only show that there is a genuine dispute as to the facts" underlying Defendant's right to judgment. Id.

A "genuine issue" exists where the record contains competent evidence of "two plausible, but contradictory, accounts of the essential facts." Weiss v. Alford, 267 S.W.3d 822, 825-26 (Mo. App. E.D. 2008) (citations omitted). If the "genuine issue" is "real, not merely argumentative, imaginary or frivolous[,]" and in dispute, the questions of fact should be resolved by the finder-of-fact, and not via summary judgment. Id. at 826 (citations omitted).

*Analysis*

Adverse possession necessitates a showing that an occupier or user of land "intended to possess the land as his or her own." Heigert v. Londell Manor. Inc., 834 S.W.2d 858, 863 (Mo. App. E.D. 1992). To establish title to a piece of land through adverse possession, a claimant must prove, by a preponderance of evidence, his or her possession of the land was: (1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for a period of ten years. Vecchiotti v. Tegethoff, 745 S.W.2d 741, 743 (Mo. App. E.D. 1987); see also Section 516.010 (setting forth a ten year statute of limitations for adverse possession). Upon convergence of all the mandatory elements of adverse possession, "[t]he adverse possessor is vested with title and the record owner is divested once the ten-year period has run." Nutting v. Reis, 326 S.W.3d 127, 130 (Mo. App. S.D. 2010). However, the failure to establish any one of these elements is fatal. Witt v. Miller, 845 S.W.2d 665, 667 (Mo. App. E.D. 1993); see also Teson v. Vasquez, 561 S.W.2d 119, 125 (Mo. App. 1977) ("Failure to prove any one element prevents the ripening of title by adverse possession.").

7

Adverse possession claims present mixed questions of law and facts. <u>Reynolds v. Brill</u>, 302 S.W.3d 716, 718 (Mo. App. S.D. 2010). Every piece of property is unique and every case must be resolved in light of its own unique circumstances. <u>Teson</u>, 561 S.W.2d at 125. In fact, "[i]t is true that the actual possession element of adverse possession is less strict for wild, undeveloped land than it is for developed land, because the nature, location, and potential uses for the property may restrict the type of affirmative acts of ownership." <u>Eime v. Bradford</u>, 185 S.W.3d 233, 237 (Mo. App. E.D. 2006).

Under Missouri law, an individual claiming ownership through adverse possession is permitted to "tack his adverse possession to that of his predecessors in title" to establish the necessary elements. <u>Flowers v. Roberts</u>, 979 S.W.2d 465, 469 (Mo. App. E.D. 1998). In fact, it may be possible for the individual claiming ownership through adverse possession to establish adverse possession, entirely, through his or her predecessors in interests. <u>See</u> <u>Counts v. Moody</u>, 571 S.W.2d 134, 139-40 (Mo. App. 1978) (predecessor had obtained title to the property by adverse possession before deeding the property to plaintiffs, and the rights of the predecessor "became those of the plaintiffs by tacking"). As such, it is important to note that although the ten years of possession must be consecutive years, those ten years need not be the ten years just prior to the filing of the law suit. <u>Kitterman v. Simrall</u>, 924 S.W.2d 872, 876 (Mo. App. W.D. 1996); <u>Watson v. Mense</u>, 298 S.W.3d 521, 526 (Mo. banc 2009) ("The ten year period to confer title by adverse possession need not occur immediately prior [to] the suit.").

Nevertheless, "[i]t is a well established rule of law that there must be a conveyance of property claimed by adverse possession by some act (by gift or otherwise) in order to effectuate a transfer of such property from the adverse holder to the grantee." <u>Porter v. Posey</u>, 592 S.W.2d

844, 852 (Mo. App. E.D. 1979) (citations omitted).  "Absent this, there can be and there is no transfer to the grantee of any right acquired by the grantor."  Id. (citations omitted).

Yet, the fact that the strip was not expressly described in the deeds in the chain of titles does not necessarily affect an individual's claim of ownership through adverse possession Auldridge v. Spraggin, 163 S.W.2d 1042, 1045 (Mo. 1942).  If the "land adversely held is included in the same enclosure with land owned and conveyed by the grantor, the taking of possession by the grantee of the entire enclosed area creates a privity with the grantor as to the part not conveyed[, and] . . . the possession of such a grantor becomes tacked to that of his grantee."  Id.; see also Johnson Cnty. Post No. 2513, Veterans of Foreign Wars, Inc. v. Jackson, 519 S.W.2d 335, 338 (Mo. App. 1975) ("A conveyance by deed does not convey land held by adverse possession, not included in the deed, unless there is evidence of some circumstance showing that it was intended to be included.") (citations omitted); Lurvey v. Burrell, 317 S.W.2d 458, 461 (Mo. 1958) ("A mere sequence of possession in several grantors is insufficient, in the absence of proof or testimony, to show the grantors' intent to convey to the grantees land not expressly included in the descriptions in each of the several conveyances.") (citations omitted).

### *Hostility*

In the case in bar, Plaintiffs claim their previous predecessors in interest, before Richard Neighbors—specifically, Jessie Neighbors, Rose Neighbors, and James Neighbors—had adversely possessed Tract C.  Plaintiffs aver Jessie Neighbors, Rose Neighbors, and James Neighbors, in combination, at some point in time in the past, had satisfied all five required elements of adverse possession.[8]  Defendant, to the contrary, disputes only one element and

---

[8] Plaintiffs do not appear to claim they, themselves, have satisfied the elements of adverse possession during their ownership of Tract A.  Rather, Plaintiffs appear to reach back in time and contend:  (1) the Neighbors Family adversely possessed Tract C; (2) the chain of title for the adversely possessed Tract C has been conveyed, by means other than deed; and (3) Plaintiffs were conveyed Tract C, in some fashion, upon Plaintiffs purchase of Tract A.

9

concedes the remaining four elements. Specifically, Defendant contends Plaintiffs' predecessors in interest never met the "hostility" element, thereby causing Tract C to never become adversely possessed.

The "hostility" element means "the possession must be opposed and antagonistic to the claims of all others, and the claimant must occupy the land with an intent to possess it as his or her own." Flowers, 979 S.W.2d at 469; see also Heigert, 834 S.W.2d at 863 ("[T]o prove hostility, an express declaration of hostility need not be made."). Ill will or acrimony is not necessarily required to prove the element of hostility. Heigert, 834 S.W.2d at 863. Thus, "[w]hen a border, even though erroneous, is observed by all parties as the boundary for the statutory period, it becomes the true boundary through adverse possession." Watson, 298 S.W.3d at 526. Conversely, "[p]ermissive use will not support a claim of adverse possession because hostile possession is lacking." Brokhausen v. Waubansee, 65 S.W.3d 598, 600 (Mo. App. S.D. 2002).

Whether one's possession of land is "hostile" is a question of the *claimant's* intent. Flowers, 979 S.W.2d at 469. Said intent may be demonstrated from the claimant's act of dominion over the land. Id.; see also Crowe, 116 S.W.3d at 622 ("It is the intent to possess, not the intent to take away from the true owner that governs."). "For possession to be hostile it is *neither required that the true owner have knowledge of the hostile claim of right or that the claimant intend to deprive him of title*." Weaver v. Helm, 941 S.W.2d 801, 805 (Mo. App. S.D. 1997) (emphasis added); see, e.g., DeVore v. Vaughn, 2016 WL 6871560, *3-*5 (Mo. App. W.D. Nov. 22, 2016) (lengthy discussion regarding "hostility" element).

At the trial court, Defendant submitted the affidavits of the most recent, living, prior owner of Tract A, Richard Neighbors, and Richard Neighbor's daughter, Lorna Neighbors-Cole.

10

Pertinently, Richard Neighbors attested neither he nor his family (i.e., James Neighbors, Jessie Neighbors, or Rose Neighbors), who had possessed Tract A before him and are now deceased, had used Tract C without Defendant's consent and permission. Defendant, ostensibly, attempts to defeat the "hostility" element by relying upon Richard Neighbors attestation of the intent and knowledge of James Neighbors, Jessie Neighbors, or Rose Neighbors. As aforementioned, Defendant elected not to proffer an affidavit of his own.

Affidavits, in support of summary judgment, must be based on personal knowledge, set forth facts that would be admissible in evidence, and show affirmatively that the affiant is competent to testify on the matters stated therein. Westhouse v. Biondo, 990 S.W.2d 68, 72 (Mo. App. E.D. 1999); see also Rule 74.04(e). An affidavit that fails to aver specific facts and relies only upon mere doubt and speculation cannot be used to raise or defeat any issue of material fact. Westhouse, 990 S.W.2d at 72. "The circuit court is not allowed to rely on hearsay in granting a motion for summary judgment." May & May Trucking, L.L.C. v. Progressive Nw. Ins. Co., 429 S.W.3d 511, 515 (Mo. App. W.D. 2014); see, e.g., Scott v. Ranch Roy-L, Inc., 182 S.W.3d 627, 635 (Mo. App. E.D. 2005) ("To the extent that the affidavits contained inadmissible hearsay and/or conclusory statements, the trial court erred in not granting plaintiffs' motion in the alternative to strike such inadmissible material from the affidavits.").

Here, although the affidavit of Richard Neighbors may attest to his own personal knowledge and beliefs, Richard Neighbors' statements interpreting the intent of James Neighbors, Jessie Neighbors, or Rose Neighbors, in regards to their undisputed possession of Tract C, is speculation and hearsay. [9] The hostility element may be found to be lacking during

---

[9] The trial court unambiguously rested its Judgment upon Richard Neighbors' affidavit. In operable part the Judgment reads: "Defendant George Matthews has shown that there is no genuine issue of material fact that Plaintiff's immediate predecessor in title's use of [Tract C] concerned in the petition was with the consent and permission of George Matthews."

11

Richard Neighbor's ownership of Tact A; however genuine issues of material fact remain in regards to the intent of James Neighbors, Jessie Neighbors, or Rose Neighbors during their respective ownerships of Tract A.[10]

This court makes no determination as to the sufficiency of Plaintiffs' evidence, but finds, at the very least, there remain genuine issues of material fact regarding the "hostility" element of Plaintiffs' claim for adverse possession. See, e.g., Crowe, 116 S.W.3d at 622 (genuine disputes exists regarding the "hostility element"). On remand, the burdens of persuasion and production still rest with Plaintiffs, but Defendant's affidavits containing hearsay are insufficient, as a matter of law, for purposes of granting summary judgment. See Conduff v. Stone, 968 S.W.2d 200, 203 (Mo. App. S.D. 1998) (implying current land owner may rely upon "remote" predecessors to establish the elements of adverse possession); Crane v. Joy, 436 S.W.2d 739, 745-48 (Mo. 1968).

Upon our review of the record, we cannot declare Defendant, as the movant for summary judgment, established there were no genuine disputes as to certain material facts impinging upon the hostility element. There, in fact, remains genuine issues of material fact regarding whether James Neighbors, Jessie Neighbors, and/or Rose Neighbors intended to possess Tract C. See Watson, 298 S.W.3d at 526 ("When a border, even though erroneous, is observed by all parties as the boundary for the statutory period, it becomes the true boundary through adverse possession."); Gates v. Roberts, 350 S.W.2d 729, 732 (Mo. 1961) (the only intent that is necessary is the intent to occupy and possess the land exclusive of the rights of all others). The trial court erred in granting summary judgment. See Rule 74.04; see also J.M. v. Shell Oil Co.,

---

[10] Lest we forget, upon convergence of all the mandatory elements of adverse possession, "[t]he adverse possessor is vested with title and the record owner is divested once the ten-year period has run." Reis, 326 S.W.3d at 130. Accordingly, if Jessie Neighbors, Rose Neighbors, or James Neighbors, collectively or individually, are found to have satisfied the elements of adverse possession, Tract C was, therein, invested in the adverse possessor and title to Tract C was divested from Defendant. Thus, Richard Neighbor's possession of Tract C with the permission of Defendant may be of no consequence, in that Richard Neighbors would have been the rightful owner of Tract C as long as the conveyance thereof is found to have been effectuated.

12

922 S.W.2d 759, 761 (Mo. banc 1996) ("Where the record reasonably supports any inference other than those necessary to support a judgment for the movant, a genuine issue of material fact exists and the movant's motion for summary judgment should be overruled.")

Our analysis, herein, is relegated to only the "hostility" element as a consequence of the single point on appeal. We would be remiss, however, not to indicate our firm conviction that there may be other genuine issues of material fact remaining. On remand, the trial court should be "mindful that courts have historically been hesitant to resolve disputes involving easements and adverse possession via summary judgment." Bilyeu v. Vaill, 349 S.W.3d 479, 482 (Mo. App. S.D. 2011).

## CONCLUSION

The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
Lisa P. Page, Judge

Philip M. Hess, C.J. and
Gary M. Gaertner, Jr., J., concur.